(60 App. Div. 567.)

## RANDALL v. BRODHEAD.

(Supreme Court, Appellate Division, Second Department.  April 26, 1901.)

1. SHIPPING—CHARTER PARTY—CHANGE IN CONTRACT BY MASTER—BILL OF
   LADING—LIABILITY OF OWNER.
   Where a charter party provides a certain freight rate, the master of
   the vessel cannot change such rate in the bill of lading by inserting an
   increased rate for the purpose of collecting such higher rate from the
   consignee for the benefit of the consignor, and the owner is not liable
   to the consignee for failure of the master, who executes such a bill of
   lading, to collect the increased rate from the consignee.

2. SAME—DEMURRAGE—AUTHORITY OF MASTER.
   Where a charter party provides a liability for demurrage for delay in
   unloading at a foreign port, which is within easy cable communication
   with the owner, the master cannot settle the claim for such demurrage
   for less than the sum due.

3. SAME—ACCORD AND SATISFACTION.
   Where there is no valid dispute as to the amount of demurrage due
   under a charter party for delay in a foreign port, the acceptance of a
   less sum by the master, and the execution of a receipt in full, which is
   not under seal, is not an accord and satisfaction, which will prevent the
   owner of the vessel from recovering the balance due.

4. PLEADING—ADMISSION OF FACT—AMENDMENT AFTER DECISION.
   Where a verified pleading contains an admission of fact which is re-
   garded as material by the parties thereto, it is error to allow an amend-
   ment thereof, over the objection of the adverse party, after the decision
   of the case.

Appeal from trial term, Suffolk county.

Action by Henry M. Randall against James E. Brodhead for
freight charges and demurrage.   From a judgment in favor of the
plaintiff, the defendant appeals, and the plaintiff appeals from an.
order allowing defendant to amend his answer after the decision of
the cause.   Judgment affirmed, and order reversed.

Argued before WOODWARD, HIRSCHBERG, JENKS, and SE-
WELL, JJ.

Thos. J. Ritch, Jr., for plaintiff.
Henry W. Goodrich, for defendant.

HIRSCHBERG, J.   The complaint states two causes of action.
The plaintiff, as managing owner of the schooner Lucy H. Russell,.
executed a charter party with the defendant, on the 17th day of
November, 1898, for a voyage from Brunswick, Ga., to Perth Am-
boy, N. J.   The defendant engaged to provide a cargo of railroad

ties for transportation, and to pay freight, under terms and conditions not material to the present inquiry. On the 13th day of December, 1898, the parties executed a second charter party for the use of the same vessel, then lying in the harbor of Brunswick, Ga., for a voyage from that port to Havanna, Cuba, the defendant engaging to furnish a full cargo of railroad ties, and to pay freight at the rate of 19 cents for each tie. The defendant, as charterer, guarantied the vessel free of all foreign port charges, including tonnage dues, light dues, pilotage, and landing tax. The lay days for loading and discharging were to commence .from the time the vessel was ready to receive or discharge cargo, at least 150,000 feet per running day, Sunday excepted, the charterers agreeing to receive from the vessel for discharging at Havanna at least 1,800 ties per running day, Sundays excepted, and to pay to the plaintiff the sum of $100 a day for each day's detention by his default. The parties subsequently agreed that the Havanna charter should be first fulfilled. For that voyage 18,327 ties were furnished and loaded, and subsequently delivered at Havanna; the complaint charging that the defendant detained the vessel on demurrage at the port 11 days; but has only paid $200 on account, leaving him still indebted for the balance. The bill of lading provided that the freight for the ties should be at the rate of 20 cents per tie, "other conditions as per c. p." The master collected at Havanna only 19 cents freight per tie, as stipulated in the charter. On the fulfillment of the Perth Amboy charter, the defendant deducted and retained from the freight of that trip the one cent per tie difference between the Havanna freight as stipulated in the charter party and in the bill of lading, computed on the 18,327 ties. The first cause of action is for the $183.27 freight; the second cause of action is for the $900 demurrage.

The case turns entirely upon the power of the master to bind the plaintiff. Could he raise the price of the freight for the exclusive benefit of the charterer? Could he settle the demurrage, not disputed, at any figure he saw fit? There were no witnesses presented by the defendant. There was little or no conflict about the questions of fact. At the conclusion of the plaintiff's case the jury was discharged, and by stipulation the questions both of fact and of law were submitted to the learned trial justice, and resolved by him in the plaintiff's favor.

As to the freight, the plaintiff deems it important that the defendant was himself apparently both shipper and consignee. The bill of lading ran to "order or to its assigns," and the master before signing required the name of the consignee. He was furnished with the following paper: "Consigned to Jas. E. Brodhead, c/o Drake & Stratton Co., Havannah. Princepe Car." The complaint alleged that this cargo, consigned to the order of blank, was duly accepted and received by the defendant, who kept the vessel detained on demurrage, etc., as stated, and the answer admits the receipt of the cargo by the defendant. But, assuming that Drake & Stratton were the consignees, I know of no principle which would permit the master to alter the terms of the charter party for the bene-

fit of the charterer. Whatever power he possesses he exercises as the agent of the owner. If he could increase the rate of freight, it would naturally inure to the benefit of his principal. The vessel was chartered by the defendant to carry a stipulated cargo, at a specified sum for freight, the only object of the change in price, on defendant's theory, being to enable him to obtain from his vendees on the sale a sum as freight in excess of the true amount; and, although the brief of the learned counsel for the defendant exhibits great research and industry, no authority is cited for the proposition that the agent of the owner is authorized to increase the freight, under the circumstances of this case, solely for the purpose of furnishing the charterer with an opportunity to secure a profit which the owner is bound to collect. The master cannot vary the contract which the owner has made, and, in this instance, the bill of lading must be regarded, not as a contract, but as a mere receipt.

As to the demurrage, the same conclusion must be reached. The master undoubtedly has authority to settle a claim for demurrage upon receiving payment, but he cannot settle without receiving payment, nor has he, under the circumstances of this case, authority to change the contract as to the stipulated sum per day. That the detention was caused by the default of the defendant or his agents is undisputed, as is also the fact that it lasted 11 days. The contract provided for the payment of $100 per day, and the master could not lawfully reduce the sum to less than $20 per day. Alexander v. Dowie, 1 Hurl. & N. 152, is not in point. While a majority of the court express the opinion that the master had authority to settle, the decision was put distinctly upon the ground that he was a part owner of the vessel, and as such had authority to bind the other owners. The case arose in 1856, and can have little application to the conditions of the present day, when submarine cables furnish means of speedy communication. Here the master could have easily communicated with the plaintiff, and have obtained without delay whatever sanction might be required for any contemplated settlement, and necessity, which is often the basis of the master's power, did not require that he should assume the responsibility of varying the terms of the charter party. Nor can the transaction be upheld as an accord and satisfaction. No such plea is set up in the answer. The evidence does not prove the existence of any dispute or compromise, but only a valid claim for $1,100, settled by the master on receipt of $200, accompanied by a receipt, not under seal, but purporting to release "both parties from all claims." The case of Holman v. Peruvian Nitrate Co., 5 Sc. Sess. Cas. 657 (4th Series) cited by the learned counsel for the defendant, is certainly no authority in his favor. According to the headnote, the court of session held in that case that it was not within the power of the master to grant a discharge of demurrage due to the owners of a vessel, except upon payment. An examination of the case does not disclose that the question was decided by the court, either expressly or necessarily. But Lord Shand did state his opinion as to the law, and no dissent on the part of his associates is recorded. Referring to the receipt which it was claimed effected a release of the claim for demurrage executed by the master, he said (page 665):

"I think it very difficult, in these circumstances, to say that the defenders have satisfactorily proved anything like a transaction between the charterers and captain, although the terms of the receipt are, no doubt, very particular. But, apart from that question, I am of opinion that the captain had no power to grant any such discharge. I have already referred to the powers of a shipmaster as agent of his owners in a foreign port. It may often be that a claim for demurrage may be as large, or almost as large, as the claim for freight itself. If a vessel be detained, waiting for a cargo, there may arise very large claims indeed. These are claims stipulated for in the charter party as between the shipowner and the charterer. The right of payment arises to the shipowner, and I do not think the captain in a foreign port has power, in ordinary circumstances, to discharge that right. Such a power is not necessary, in the ordinary use of the ship or performance of the voyage, and it would be a serious matter for shipowners if a captain in a foreign port should be entitled to discharge a large claim of demurrage for a comparatively small sum. The demurrage in this case was to be paid daily, and that shows that the captain had power to receive and discharge the demurrage actually paid. I think he had not authority, however, to grant a discharge binding his owners for demurrage that he never received."

I accord fully with the opinion of the learned trial justice in the case at bar, that "the master of the vessel had no right, under the circumstances of this case, to vary the contract made between the plaintiff and defendant, either in respect to the freight sale or amount of demurrage."

After the decision had been made and signed, the learned trial justice granted an order amending the answer by striking out the admission of the receipt of the Havanna cargo by the defendant. This was error. He states in his opinion "that it is immaterial, so far as the freight sale is concerned, whether the defendant or some other person was consignee." I am inclined to the opinion that this is correct, but a higher court may think otherwise. It is not necessary to pass on the question of the scope, extent, or materiality of the admission. The defendant regards it as sufficiently material to inspire an earnest desire to get rid of it, and the plaintiff is equally anxious to retain it. Without desiring in the slightest degree to limit the large discretion vested in trial courts on the subject of amendments to pleadings, it seems plain that the exercise of such discretion cannot be extended to the verified admission of a fact which the litigants deem material, and which in reason could no more be stricken out after the trial, when embodied in a pleading, than if it had been spread upon the record as a part of the formal evidence. The order involves a substantial right in a matter which may possibly tend to jeopardize the plaintiff's judgment.

The judgment should be affirmed, with costs, and the order reversed, with $10 costs and disbursements. All concur.