## AMERICAN METAL TRANSPORT CO., Inc., v. REDERIAKTIES DRAGOR.

(District Court, S. D. New York. November 5, 1923.)

**1. Shipping ⬤➩49(2)—Charterer cannot reduce hire by loading different cargo than that specified in charter party.**

The loading by the charterer of a ship chartered to carry a specified cargo with a different cargo is a breach of the charter party, and raises an implied promise by him to pay at least as much as he would pay for the cargo specified in the charter party.

**2. Shipping ⬤➩49(2)—Charterer held bound to pay freight vessel would have earned under charter.**

Where a ship chartered for carriage of a cargo of nitrate of soda, of which she could carry her rating of 600 tons, was loaded by the charterer with general cargo, for which she had space for only 451 tons, the charterer *held* bound to pay at the charter rate per ton on 600 tons.

**3. Shipping ⬤➩35—Master not authorized to alter terms of charter party.**

A master has no authority to alter or vary the terms of a charter party.

In Admiralty. Suit by the American Metal Transport Company, Inc., against the Rederiakties Dragor. Decree for respondent.

Loomis & Jones and Homer L. Loomis, all of New York City, for cross-libelant.

Haight, Smith, Griffin & Deming and Perry Allen Beck, all of New York City, for cross-respondent.

BONDY, District Judge. On September 17, 1918, the Dragor was chartered by the respondent to the libelant under a charter party which provided that the said steamer shall with all possible dispatch, after having discharged its inward cargo, proceed as ordered at last port of discharge to load at one port and/or adjacent caletas between Valparaiso and Pisagua, where she shall receive a full and complete cargo of nitrate of soda in bags, and/or ore, not exceeding what she can reasonably stow and carry, and that the steamer shall not load more than ——— tons and not less than ——— tons, English gross weight, and that the master must declare upon arrival at the first loading port the exact amount of cargo he will take, within 25 tons, more or less.

It further provided that the charterer agrees to pay, or cause to be paid, to the captain or his order, for freight on the said steamer, on delivery of the cargo at the port of discharge, according to the bills of lading and the charter party, $25 in full per ton of 2,240 pounds avoirdupois. It also provided that all freight is to be prepaid at New York on cable advices that the vessel is loaded and that prepaid freight is not to be returned under any condition; the out-turn weight, however, to govern the payment of freight.

---

⬤➩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The libelant, relying on notice that the cargo had been loaded, and believing that $25 per ton for 600 tons was due for freight, paid the respondent, prior to delivery of the cargo, $8,800, and disbursed during the voyage on behalf of the Dragor and her owner $5,939.09, amounting in the aggregate to $14,739.09. The Dragor, however, was not loaded with nitrate of soda or ore, but with a general cargo, which was lighter than nitrate of soda, and the out-turn weight of which at New York was only 451⅘ tons.

This suit was brought by the libelant to recover the difference between $25 per ton on approximately 600 tons, paid by the libelant, and $25 per ton on 451⅘ tons, the actual out-turn weight of the cargo carried and delivered to the libelant. As appears by the charter party, the Dragor was chartered inward and outward to the libelant under two distinct charter parties; the first for a trip from New York to Valparaiso, and the other for the return trip, from Chili to New York. The charter which provided for the voyage outward described the Dragor as being of 600 tons dead weight.

The agent of the libelant, who had full charge of handling the steamer at Valparaiso, testified that he gave the captain of the Dragor the choice of a general cargo at Valparaiso, or of soda nitrate and ore at different ports 500 miles north of Valparaiso, in the northern ports of Chili; that the captain exercised his preference and took the general cargo at Valparaiso; that the captain thereby avoided the necessity of calling at several ports and saved at least six days; that he thereby was enabled to have the engines, which gave him trouble, repaired while the ship was discharging and loading; that the captain did not take all the general cargo that the libelant was prepared to give; that the steamer was loaded to the point that it was impossible for the ship to take another ton of cargo, because there was no more cargo space available.

The shipbroker who negotiated the charter party testified that an ordinary vessel like the Dragor does not make a charter party for general cargo; that a ship is generally chartered according to the number of tons she can carry; that her rate is fixed according to her tonnage, irrespective of the nature of the cargo; that the dead weight carrying capacity of the boat makes her market value; that, if an owner is asked to allow the privilege of a general cargo, he would say "Yes," provided he is paid on her dead weight; that in all charters, when there is the privilege of general cargo, it is stipulated that the ship shall be loaded to her full weight; that the Dragor carried 450 tons of the light cargo; that she might have carried 600 tons of nitrate of soda, and that, if the owner knew in the beginning that she was only to carry 451 tons, the rate would not have been $25.

The libelant contends that the weight of the cargo, and not the character of the cargo, constituted the material consideration of the charter party, and that the language of the charter party allowed the master to say how many tons he would carry. The charter party provided that the steamer shall receive a full and complete cargo of nitrate of soda or ore, not exceeding what she can reasonably stow and carry, and that the steamer shall not load more than ——— tons and not less than ——— tons, and that the master must declare upon ar-

rival at the first loading port the exact amount of cargo he will take, within 25 tons, more or less. The provision allowing the master to declare the exact amount of cargo he will take, within 25 tons, more or less, must be held to refer to a cargo of nitrate of soda or ore. It does not give the master the right to change the nature of the cargo specifically described in the charter party. The interpretation contended for by the libelant would require the inference that the description of the cargo was incorporated in the agreement without any purpose whatsoever.

[1] The libelant could not load the Dragor with a cargo lighter than the specified cargo, or with any cargo other than the specified cargo, without breaching the charter party. See Lewis v. Marshall, 7 M. & G. 729, 13 L. J. C. P. 193; Warren v. Peabody, 19 L. J. C. P. 43. The proper legal inference, in a case in which a charterer tenders a cargo which is not within the charter party, is a promise by the charterer to pay at least as much as he would pay for the cargo specified in the charter party.

[2] The Dragor was chartered at $25 a ton, based on a dead weight of 600 tons, or at $15,000 for the trip from the west coast of South America to the United States. The respondent should not be deprived of any part of its remuneration because the charterer failed to carry out its obligations and loaded the ship with a cargo lighter than nitrate of soda. See Steven v. Bromley & Son, [1919] 2 K. B. D. 722; Rederi Sverre Hansen A/S and PHS. Van Ommeren (App.) 6 Lloyd's L. L. R. 193, C. C. A.

[3] It is well settled that the master of a vessel has not any authority to alter or vary the terms of the charter party. Randall v. Brodhead, 60 App. Div. 567, 70 N. Y. Supp. 43; Merchants' Banking Co., Ltd., v. Cargo of the Afton, 134 Fed. 727, 67 C. C. A. 618 (C. C. A. 2d Cir.).

The cross-libel, therefore, is dismissed, with costs.