MERCHANTS' BANKING CO., Limited, v. CARGO OF THE AFTON
(SHEWAN, TOMES & CO., Claimants).

(Circuit Court of Appeals, Second Circuit. June 2, 1904. On Rehearing, November 25, 1904.)

No. 209.

1. SHIPPING—RIGHTS OF MORTGAGEE—FREIGHTS.

The owners and mortgagors of a ship, who are allowed to remain in possession by the mortgagee, are at liberty in the meantime to make contracts for her employment; but on taking possession the mortgagee takes the right to all the freight which is then accruing under such contracts, but not to freights which have been received by the mortgagor, although for the voyage then current.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Shipping, § 105.]

2. SAME—ADVANCE PAYMENTS ON FREIGHT—AUTHORITY OF MASTER.

The owners of a steamship, who had given a mortgage thereon, but who remained in possession, chartered her for a voyage; the charter party providing for advances by the charterers to the master at different ports, not exceeding a stated amount, to be deducted on final settlement of freights, and that the balance of freight money should be paid on unloading and right delivery of cargo. Such advances were made, and also additional advances, for which the master gave receipts, indorsed on the charter party, stating that the money was received as advance freight. On reaching the port of delivery, the mortgagee took possession of the vessel. *Held* that, while it was competent for the parties to the charter by agreement to enlarge the provision for advances to be applied on the freight, the master, as such, had no authority to change the provisions of the charter party, and that in the absence of proof that the additional advances were required by the necessities of the ship, or that the master's action was authorized or ratified by the owners before possession was taken by the mortgagee, the latter was entitled to recover all the freight due by the terms of the charter.

3. ADMIRALTY—REHEARING—GROUNDS.

A rehearing in admiralty cannot be granted to allow a party, after an adverse decision, to introduce further evidence, which was fully known to such party, and might have been introduced on the original hearing, but was not, because of an error of judgment on the part of counsel as to its materiality.

Appeal from the District Court of the United States for the Southern District of New York.

For opinion below, see 125 Fed. 258.

F. M. Brown, for appellant.

Chas. C. Burlingham, for appellees.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

WALLACE, Circuit Judge. The decree appealed from dismissed the libel. The facts of the case are succinctly stated in the opinion of the court below:

"This is a libel against the cargo of the steamship Afton, and the freight moneys arising therefrom, to recover the sum of $8,737.55. In December, 1900, the firm of McLaren & McLaren, of Glasgow, owners of the steamship Afton, executed a mortgage on the steamer to the libelant, the Merchants' Banking Company, Limited, of London, to secure a running account and advances to be made thereafter. The mortgage was duly recorded at Glasgow, but the mortgagee did not go into possession of the steamer at that time; the mortgagors continuing in possession. In July, 1902, McLaren & McLaren chartered the steamer, which was then on a voyage to Shanghai, to Shewan, Tomes & Co., the claimants in this suit, for the return voyage from China to New York. The charter party provided that the steamer should have a lien on the cargo for freight, that a lump sum freight of £7,750 was to be paid on delivery of the cargo, and that sufficient cash, not exceeding £1,500, was to be advanced to the master, if required, at the loading ports, on account of freight; the same to be deducted on final settlement of freight. During the voyage, at different ports in China, the master called for and received from Shewan, Tomes & Co. the agreed sum of £1,500, and also additional advances, amounting to £1,803 8/4, the equivalent in American currency of $8,737.55. For these additional advances, receipts, signed by the master, were indorsed on the charter party; stating that the money was received as advance freight, or, in some of the receipts, as advance against freight, to be collected from the first payment of the charter money. When the steamer reached New York, the libelant, the Merchants' Banking Company, Limited, took formal possession of the steamer under the mortgage, on which there was then due about £110,000, and which was then in default. Subsequently the cargo was delivered, and the freights collected by Shewan, Tomes & Co. under an arrangement which preserved to the Merchants' Banking Company, Limited, its rights as mortgagee in the possession of the balance of the charter freight. On the final settlement between the Merchants' Banking Company, Limited, and Shewan, Tomes & Co., Shewan, Tomes & Co. retained for their own reimbursement said sum of $8,737.55, which they had advanced to the master of the steamer, and paid over the balance to the bank. This action is brought to recover the amount so retained."

The case presents the questions of law whether upon these facts the mortgagee was entitled to all the freight money due from the charterers to the shipowners at the time the libelant took possession under its mortgage; and (2) whether the advances made by the charterers to the master in excess of those stipulated for in the charter are to be considered as a prepayment of freight. If the advances in question had been to the shipowners, we should entertain no doubt that the charterers would be protected, and the mortgagee would have no lien to that extent. It is undoubtedly the law that the owners and mortgagors of a ship who are allowed to remain in possession by the mortgagee are at liberty in the meantime to make contracts for her employment like the present charter; but, when the mortgagee takes possession, he takes the right to all the freight which is then accruing. "And if he finds any cargo on board in respect to which the freight has accrued, and on which the mortgagor has a lien for the freight, the mortgagee succeeds to that lien, and can enforce it in a court of law." Mellish, L. J., in Keith v. Burrows, 2 C. P. D. 165. Neither is there any doubt that the mortgagee does not acquire the right to freights which have become payable and have been received by the mortgagor before possession is taken, although for the voyage then current. Willis v. Palmer,

29 L. J. C. P. 194.   The doubt arises only when an owner has received or disposed of freights for the current voyage before they were payable, as by a prepayment from the charterer. or an assignment by the owner to a third party.   There is authority for the proposition that the mortgagee's right to the freight on taking possession cannot be defeated or curtailed by an assignment by the shipowner (Brown v. Tanner, L. R. 3 Ch. App. [1868] 597; Tanner v. Phillips, 10 Asp. Mar. Cas. [1872] 448), and the reason seems plain:  The owner can transfer no better title than he has at the time, and, if the mortgagee takes possession before the freight is paid, the owner has no title to it, his defeasible title having been divested.   Dobbyn v. Comerford, 10 Ir. Ch. Rep. 327.   The case of a prepayment presents different considerations.   Until the mortgagee has intervened, the owner can cancel an existing charter or make a new charter; and, this being so, there is no reason why a modification of an existing charter should not be within his rights. If the owner and charterer agree to modify the charter in respect to the time of paying the freight, the mortgagee has no right to complain.   He has sanctioned such a transaction by permitting the mortgagor to remain in possession.   So far we agree with the decision of the court below.   But the dismissal of the libel proceeded upon the theory that the advances made by the charterers were in effect a prepayment of the freight to the owners.   If we were able to take that view, we should have no difficulty in affirming the decision.   The advances were made to the master of the ship.   There is no proof that they were required by the necessities of the ship, and the charter gave the master no authority to receive them, because it provided that only £1,500 should be advanced, and the balance of the freight money should be paid on final settlement of freight, viz., "on unloading and right delivery of cargo."   The burden of proving the authority of an agent to receive money lies on him who makes the payment.   Seymour v. Smith, 114 N. Y. 481, 21 N. E. 1042, 11 Am. St. Rep. 683.   Presumptively, the master was without authority to receive payment of freight otherwise than pursuant to the terms of the charter party. Doubtless a master has authority to collect freight at destination, that being within his customary powers, unless the owners choose to appoint a different person to do so.   Grant v. Norway, 10 C. B. 665; The Edmond, Lush. 58, 29 L. J. Adm. 76.   But it is not within his customary powers to collect freight payable under a charter in advance of the charter terms.   In Balcarres Brook S. S. Co. v. Grace, 75 Fed. 1017, 22 C. C. A. 7, this court decided that the master has no authority to release a charterer from paying the hire reserved to a shipowner in a charter party, or to vary the terms of the contract made by the owner.   In Pierson v. Goshen, 17 C. B. N. S. 352, a shipper loaded a part cargo under an arrangement with the charterer, who made default in performance, and thereafter the shipper made a charter with the master of the entire capacity of the ship at a reduced rate.   The court held that the master was without authority to vary the rate of freight upon the cargo which the shipper had previously loaded.   In The Salacia, 32 L. J. Adm., the ques-

tion was whether certain advances of the charterer to the master furnished a good defense pro tanto to an action for freight by the holder of a bottomry bond. In deciding that they were not, Dr. Lushington said, "An advance on freight can only be made in virtue of stipulations contained in the charter." In Maud & Pollock, Merchant Shipping, 158, it is stated, "The master has no power to vary the rate of freight at which goods are to be shipped, or to make freight payable beforehand, or to any person other than the owner." He has no authority to assign the freight. Willis v. Palmer, 29 L. J. C. P. 194; Sir Henry Webb, 13 Jur. 639.

We are constrained to hold that the charterers have not shown any defense to the claim of the mortgagee. The mortgagee was entitled to recover the whole freight payable by the terms of the charter, unless the charterers established the defense of payment to the vessel owners before the mortgagee took possession. This defense is not established by proving payment to the master, without proving that the master had authority to receive it. There is no evidence in the case from which it can be inferred that the owners ever received the advances in question, or ratified the act of the master in any way. If they received the advances, but not until the libelant had taken possession as mortgagee, any ratification by that act would be unavailing. The act of ratification must take place at a time and under circumstances when the ratifying party might himself have lawfully done the act which he ratifies. Bird v. Brown, 4 Ex. Ch. 786, 789; Parmelee v. Simpson, 5 Wall. 81, 18 L. Ed. 542.

The decree is reversed, with costs, and with instructions to the court below to decree for the libelant for the unpaid balance of freight, with interest.

## On Application for Rehearing.

The appellees have applied for a rehearing of this cause, and for leave to take further proofs. The cause was decided against them, reversing the decree of the court below in their favor, upon the ground that, to entitle them to retain the sum of money advanced by them to the master of the Afton, it was incumbent upon them to show that it had been advanced to him as a prepayment of freight to the owners of the Afton under the existing charter of the vessel, and that there was no evidence in the record to establish that fact. The object of the present application is to enable them to introduce further proofs which will establish this controlling fact. The cause was heard in the court below and in this court upon an agreed statement of facts stipulated by the proctors for the respective parties. It now appears that there is no doubt about the particular fact, and that in settling the agreed statement of facts the proctors for the appellant repeatedly offered to have it incorporated into the agreed statement of facts, on condition that the proctors for the claimants would stipulate that the advances were not required by or applied to the uses of the steamship, but were applied to the personal needs of the owners, in no way connected with the steamer. It further appears that upon the hearing in the court below the

proctor for the appellant pointed out to the proctors for the appellees that it did not appear by the agreed statement of facts that the advance was made with the consent of the owners, or that they had ever received the benefit of it. It further appears that after the decision by that court, and after the record had been printed upon which the appeal was to be heard in this court, the proctors for the appellant again called the omission to the attention of the proctors for the appellees, and offered them to rectify it by a supplementary stipulation. The proctors for the appellees, apparently relying upon the indorsements upon the charter party, refused to amend the stipulation, and the record in the court below and in this court contains, therefore, no legal proof of the fact that the payments were made to the master with the consent of the owners. Thus they elected to rest their case on a record which was silent in respect to a fact capable of proof, and which they now seek to prove after its importance has been shown by our decision. We cannot grant the rehearing under these circumstances without ignoring a rule of procedure which rests upon the most solid foundations of propriety and expediency. In the language of Mr. Justice Story in Baker v. Whiting, 1 Story, 236, Fed. Cas. No. 786:

"I apprehend that no court of equity has ever felt itself at liberty to grant an application of this sort upon the suggestion of an error of judgment or a mistake of law by counsel as to the pertinency or force of evidence to be used in a cause."

The rule is inflexible that leave is never given to admit new evidence after a decree where the party might by due diligence have introduced it originally in the cause, or had full and ample means of knowledge of it within his reach. As is said in the opinion in Norris v. Le Neve, 3 Atk. Rep. 36, the rule is one "which cannot be broken in upon without manifest danger to the interests of all the parties in controverted suits, and it certainly will not do to lay down a new rule for this cause only."

We regret exceedingly the hardship which has been brought upon the appellees by the action of their proctors, but cannot remedy it by an abuse of judicial discretion. In denying the application, it is due to the proctors to state that in electing to stand on a record which contains no legal proof of a material fact, and declining to avail themselves of an admission which they might have secured, they are entitled to the benefit of the excuse that they acted upon the advice of their counsel in the cause—one of the leading practitioners of the admiralty bar of this circuit.

Application denied.