UNITED STATES v. STERLING et al.

District Court, S. D. New York. September 8, 1927.

1. Trusts ⬡359(2)—Suit to recover funds paid by trustee contrary to trust is properly brought in equity.

Suit is properly brought in equity to recover funds received and held by trustee, and alleged to have been paid out contrary to provisions of trust.

2. Shipping ⬡27—Freights earned while agreed purchaser of ship is in possession belong to purchaser, but those earned after owner retakes ship for breach of agreement belong to owner.

As between owner of vessel and purchaser in possession under executory contract to purchase, freights fully earned while agreed purchaser is in possession belong to purchaser; but freights earned after owner retakes ship for breach of purchase agreement belong to owner, and agreed purchaser cannot by assignment defeat right of seller, on retaking possession, to claim freights subsequently earned.

3. Shipping ⬡27—Seller of vessel, who made no attempt to put purchaser in default, cannot claim freight moneys earned under trustee's management against assignee of purchaser.

Assignment by agreed purchaser of ship of freight moneys *held* effective as against claim of seller, where charter party commitments were carried out under supervision and management of trustee, assignors were not put in default under terms of purchase agreement, and no attempt was made by owner to terminate contract and retake vessel.

4. Shipping ⬡27—Seller's lien for advancements and disbursements necessary in performance of charter parties held superior to claim of assignee of purchaser of vessel as claim against freight moneys.

Advances and disbursements by seller of vessel, necessary in performance of charter party under which freights were earned, constitute claim to freight moneys prior to that of assignee of agreed purchaser of vessel, where freights were earned under management of trustee after purchaser became insolvent.

5. Subrogation ⬡2—Shipowner, having discharged lien, cannot enforce it against ship or freights.

Where owner of ship discharges lien, he extinguishes it, and cannot enforce it against ship or her freights.

6. Shipping ⬡27—Rights of shipowner as against agreed purchaser as to freight moneys and disbursements made in earning them are same as mortgagee's.

Rights of shipowner as against agreed purchaser with relation to freight moneys and disbursements made in earning them are same as those of mortgagee.

In Equity. Suit by the United States against Helene V. A. Sterling, as administratrix of the goods, chattels, and credits of the estate of George W. Sterling, deceased, and others. Interlocutory decree entered for complainant, with reference to a special master to determine the amount due.

Suit in equity to recover from the Commercial Trust Company of New York certain freight moneys earned by the sailing vessels Arapahoe and Tonawanda, received and held by George W. Sterling, as trustee, and thereafter paid by Sterling to the Commercial Trust Company of New York, pursuant to a judgment of the Supreme Court of the state of New York, entered in an action to which the complainant was not a party.

On June 3, 1920, the United States of America, acting through the United States Shipping Board, and as owner of the steel sailing vessels Arapahoe and Tonawanda, entered into two contracts for the sale of these ships, one with the Arapahoe Navigation Company for the sale of the Arapahoe, and the other with the Tonawanda Navigation Company for the sale of the Tonawanda. The two contracts are identical in form, and in each the seller agrees to sell and the buyer agrees to purchase the vessel at the rate of $55 per dead weight ton, the actual tonnage being agreed upon in each case. The purchase price was agreed to be paid, 25 per cent. on the closing date, which, however, was left blank in the contract, and by giving promissory notes for the balance secured by mortgage. Before the execution of the contracts the purchaser in each case deposited the sum of $3,333.33, which it was agreed should be applied on the 25 per cent. payment to be made upon the closing date. In each case the seller agreed to deliver a good and sufficient bill of sale of the vessel on the closing date, upon condition, however, that the buyer paid the 25 per cent. installment and executed and delivered the mortgages and notes.

After the making of these contracts, the Arapahoe came into the possession of the Arapahoe Navigation Company, and the Tonawanda came into the possession of the Tonawanda Navigation Company. So far as appears from the evidence, no agreement was ever reached between the parties fixing a closing date, nor was demand made by the complainant upon either purchaser for the payment of 25 per cent. of the purchase price, and the execution and delivery of the notes and mortgages provided for in the agreements; nor did either of these companies tender these payments or documents, or demand the delivery of a bill of sale. Nor does it appear that the complainant reclaimed

the vessels from the purchasing companies, or terminated the contracts of purchase. The vessels were chartered by the purchasing companies, the Arapahoe to carry a cargo of lumber from Pensacola, Fla., to Montevideo, and the Tonawanda to carry a cargo of lumber from Gulfport, Miss., to Buenos Aires.

The Arapahoe charter contained the following provision: "The freight is earned and payable in cash in New York upon receipt of telegraphic advice of signing bills of lading, in United States gold or its equivalent, without discount or allowance, and not returnable, ship and/or cargo lost or not lost." The Tonawanda charter contained the following provision: "The freight is earned and payable in cash upon loading of cargo at port of loading, in United States gold or its equivalent, without discount or allowance, upon signing of bills of lading."

While the vessels were still in the possession of the purchasers, the Arapahoe charter was assigned to the Commercial Trust Company of New York as security for a loan of $25,000 to Victor S. Fox & Co., Inc., as agents of the Arapahoe Navigation Company, and the Tonawanda charter was assigned to the Commercial Trust Company of New York to secure a similar loan of $35,000 to Victor S. Fox & Co., Inc., as agents for the Tonawanda Navigation Company. These moneys were advanced for use in connection with the general affairs of the two purchasing corporations, and do not appear to have been used in disbursing either the Arapahoe or the Tonawanda in the performance of their commitments under these charter parties.

On October 6, 1920, George W. Sterling was appointed receiver in bankruptcy for the Arapahoe Navigation Company and for the Tonawanda Navigation Company. The vessels had not then been loaded, and before any freight moneys were paid notice was given to the charterers by the Commercial Trust Company and by the United States Shipping Board of their respective claims to the freight moneys. A conference was then held, and an agreement reached between representatives of the Arapahoe and Tonawanda Companies, the Commercial Trust Company, and the United States Shipping Board "that the charter party commitments be carried out under the supervision and management of Sterling, as trustee, and that he should receive and hold the freight moneys for account of whoever may be found entitled to them." Pursuant to this arrangement, Sterling thereafter received the freight moneys from the charterer of each vessel, and held the same until the Commercial Trust Company recovered a judgment against him in an action brought in the Supreme Court of this state, to which the United States was not a party. In the meantime, however, the Shipping Board made disbursements and advances necessary in the performance of the charters under which the freights were earned, and subsequently paid commitments of the vessels for supplies and repairs, etc., for all of which it claims liens upon the freight moneys in excess of the entire amount originally paid to Sterling. After the recovery of the judgment against him, Sterling paid over the freight moneys, with such interest as had accumulated thereon, to the Commercial Trust Company, deducting for his services as trustee the sum of $5,000. The propriety of this deduction is not questioned, and recovery is sought only of the moneys actually received by the Commercial Trust Company from Sterling.

Upon the trial the complaint was dismissed as against the New York Trust Company and the Mechanics & Metals National Bank of the City of New York, since they were joined only as depositories of the funds, which have since been paid to the Commercial Trust Company.

Emory R. Buckner, U. S. Atty., of New York City (G. Biddle, Sp. Asst. U. S. Atty., of New York City, of counsel), for complainant.

John J. Curtin, of New York City, for defendant Commercial Trust Co. of New York.

Earl B. Barnes, of New York City, for defendant Sterling.

White & Case, of New York City (William St. John Tozer, of New York City, of counsel), for defendant New York Trust Co.

THACHER, District Judge (after stating the facts as above). [1, 2] The suit is properly brought in equity, since recovery is sought of funds received and held by Sterling as trustee, and alleged to have been paid to the Commercial Trust Company contrary to the provisions of the trust. By the terms of the trust the freight moneys were to be held for account "of whoever may be found entitled to them." The claim of the Commercial Trust Company rests upon an assignment of unearned freights, made by the agreed purchasers of the vessels, who never acquired title. The effect of such an assignment is quite clearly established by the authorities. As between the mortgagor and

mortgagee of a vessel, and in the absence of express agreement disclosing a contrary intention, freights fully earned while the mortgagor is in possession belong to the mortgagor, but freights earned after the mortgagee takes possession of the property under his mortgage belong to the mortgagee. Merchants' Banking Co., Ltd., v. Cargo of the Afton, 134 F. 727 (C. C. A. 2d). And the same rule applies as between the owner of a vessel and an agreed purchaser in possession under an executory contract to purchase the ship. In such cases freights fully earned while the agreed purchaser is in possession belong to the purchaser, but freights earned after the owner retakes the ship for breach of the purchase agreement belong to the owner. Jackson v. 36 Blocks of Marble, etc., 266 F. 58 (C. C. A. 2d); The Neponset Cases, 13 F.(2d) 808 (C. C. A. 1st); In re Atlantic G. & P. S. S. Co. (D. C.) 289 F. 145.

[3] It is also clear from these decisions that neither the agreed purchaser nor the mortgagor can by his assignment defeat the right of the seller or mortgagee, upon retaking possession, to claim the freights subsequently earned. Before the ships were loaded, a receiver in bankruptcy was appointed for each of the purchasing companies. At about the same time, and before any freight moneys were earned or paid, the vessels then being in course of loading, notice was given by the Commercial Trust Company and by the United States Shipping Board of their respective claims to the freight moneys. In order that the freights might be collected and the charters performed, it was then agreed that the charter party commitments should be carried out under the supervision and management of Sterling, as trustee, and that he should receive and hold the freight moneys for account of whoever might be found entitled to them. Thus it appears that, when the freights were earned, the ships were not in the possession of the assignors, but were in the possession of Sterling as trustee.

It is argued that his possession was equivalent to possession by the Arapahoe and Tonawanda Companies, because the complaint alleges that the vessels came into the possession of these companies after the making of the contracts of sale, and there is nothing to show that the Shipping Board ever reclaimed or took back the ships. The Commercial Trust Company therefore insists that under its assignment it is entitled to the freights earned while Sterling, as trustee, was in possession. From the circumstances it is plainly to be inferred that the agreement that Sterling should operate the ships and receive the freight moneys as trustee was intended to be entirely without prejudice to the rights of the parties. The operating companies were not in default under the terms of their purchase agreements, and no attempt was made by the complainant to put them in default, nor was any attempt made to terminate the contracts or to retake the vessels. The obvious purpose of the arrangement with Sterling was to afford a method for collecting the freights and carrying out the commitments of the charter parties without prejudice to the rights of the various parties concerned as they existed at that time. Consequently it must be concluded that the possession of Sterling is to be regarded, in its legal effect upon the rights of the parties, as equivalent to the prior possession of the purchasing companies. The result is that the assignment of the freight moneys to the Commercial Trust Company is to be regarded as effective against the claim of the complainant as owner of the vessels.

[4, 5] But the complainant's asserted right to recover is predicated, not only upon the alleged invalidity of the assignment, but, conceding its validity, upon specific maritime liens for advances and disbursements necessary in the performance of the charter parties under which the freights were earned. That such advances and disbursements were made by the complainant, in an amount exceeding the sum of the freight moneys received by Sterling, is alleged in the complaint, and sufficient evidence was adduced upon the trial to show that for some of these advances the complainant is entitled to a lien upon the freight moneys superior to the lien created by the assignment to the Commercial Trust Company, which was given as security for advances which were not used by the purchasing companies in disbursing these ships. Freights of The Kate (D. C.) 63 F. 707. It has been said that if an owner discharges a lien he extinguishes it and cannot enforce it against the ship or her freights. The Ruth E. Merrill, 286 F. 355 (C. C. A. 2d). But in that case a mortgagee who had not gone into possession was allowed to enforce a lien against the mortgaged vessel for advances made in payment of existing liens, although the vessel was mortgaged for more than she was worth. [6] The situation of the complainant with relation to the freight moneys, and disbursements made in earning them, is, I think, analogous to that of a mortgagee who has not

taken possession under his mortgage. Its rights with relation to freight moneys are the same as those of a mortgagee (cf. Merchants' Banking Co., Ltd., v. Cargo of the Afton, supra; and In re Atlantic G. & P. S. S. Co., supra), and its contributions to the expense necessarily incurred in earning the freights should be treated with the same consideration as similar contributions by a mortgagee. The vessels were operated by Sterling, as trustee, and it was necessary that the charter commitments be performed and that the cost of performance be met. Expenditures necessary for this purpose were a proper charge against the moneys in his hands. Those who made disbursements or advances for this purpose upon the credit of the ship and her freights are entitled to assert a lien against the freight moneys. Freights of The Kate, supra; The Charles H. Cramp, 1924 A. M. C. 131.

Regarding the position of the complainant as analogous to that of a mortgagee who has not taken possession, the complainant should not, under the decision in The Ruth E. Merrill, supra, be precluded from enforcing a lien for its disbursements and advances, provided the same were made under such circumstances as would entitle any stranger to the title to enforce liens therefor against the freights. The proofs do not disclose with sufficient particularity the circumstances under which all of the advances were made, no doubt because of the ruling made upon the trial that, if it was made to appear that the complainant was entitled to recover any part of the freight moneys, a reference would be had to determine the amount for which it is entitled to assert a lien against the fund.

Accordingly an interlocutory decree may be entered adjudging that the complainant is entitled to recover from the Commercial Trust Company the amount of its disbursements necessarily incurred in enabling the vessels in question to perform their commitments under the charter parties pursuant to which the freight moneys were earned and paid, together with the amount of any other maritime liens which it may be entitled to enforce against said freight moneys by reason of the fact that it has acquired and preserved without extinguishment the maritime liens of others for similar advances or disbursements, and referring to a special master to hear and report the circumstances under which such advances were made or liens acquired, and the amount thereof for which the complainant is entitled to payment out of the freight moneys.