**LAYNE & BOWLER CORPORATION et al. v. UNITED STATES SHIPPING BOARD EMERGENCY FLEET CORPORATION et al. ***

Circuit Court of Appeals, Ninth Circuit. June 18, 1928.

No. 5404.

1. **Shipping** ⟠149—Assignments of ship's freight, attached to bills of lading sent bank for collection of freight due, held not void for failure to express consideration or name assignee.

Failure of assignments of ship's freight attached to bills of lading to express consideration or name assignee was not fatal to assignments, and delivery of the bills of lading to bank with instructions to collect amount of freight due was sufficient assignment.

2. **Shipping** ⟠149—Right to freight is generally incidental to ownership of vessel.

As a general rule, the right to freight is incidental to the ownership of the vessel, and the owner is the only person who has right to the earnings made by the ship.

3. **Shipping** ⟠149—Only owner of ship may assign right to freight as right incidental to vessel.

Right to freight as incidental right to vessel is not assignable, except by the owner of the ship.

4. **Shipping** ⟠149—United States Shipping Board Emergency Fleet Corporation, as mortgagee of vessel whose equitable owner, having possession, had collected and assigned freight, held not entitled to retain second freight charge exacted from consignee (46 USCA §§ 741–752).

United States Shipping Board Emergency Fleet Corporation, as mortgagee of vessel in possession of transport company, as transferee of buyer and owner of equitable interest therein, *held* not entitled to retain second freight charge collected from consignee on shipment, where freight had already been paid transport company and assigned in connection with bills of lading, in suit under Act March 9, 1920 (46 USCA §§ 741–752; Comp. St. §§ 1251¼–1251¼k).

Appeal from the District Court of the United States for the Southern Division of the Southern District of California; William P. James, Judge.

Libel by the Layne & Bowler Corporation and the Bayer-Rothgeb Company against the United States Shipping Board Emergency Fleet Corporation and the United States. From an adverse decree, the United States appeals. Affirmed.

Samuel W. McNabb, U. S. Atty., and Elden McFarland, Asst. U. S. Atty., both of Los Angeles, Cal., and F. R. Conway, Asst. Admiralty Counsel U. S. Shipping Board, of Washington, D. C.

Glensor, Clewe, Van Dine & Turcotte, of Los Angeles, Cal., for appellees.

Before RUDKIN, DIETRICH, and HUNT, Circuit Judges.

HUNT, Circuit Judge. Appeal by the United States from a decree for libelants, growing out of a libel in rem and in personam, for the recovery of an alleged duplicate payment of freight for the transportation of certain pig iron shipped on April 11, 1921, by steamer Anna E. Morse, consigned to the order of libelants, from Mobile, Ala., to Los Angeles, Cal. The suit was brought under Suits in Admiralty Act March 9, 1920 (41 Stat. 525 [46 USCA §§ 741–752; Comp. St. §§ 1251¼–1251¼k]). The decree was against the United States. As against the Fleet Corporation, the libel was dismissed. The shippers were Tuffli Bros. Pig Iron & Coke Company. Layne & Bowler Corporation and Bayer-Rothgeb Company were the owners, and they or their assigns were consignees of the freight shipped. At the time the United States Shipping Board Emergency Fleet Corporation, for the United States, held the record title to the ship; the equitable ownership being in the Virginia Shipbuilding Corporation or its nominee, the United States Transport Company, the last-named company then having the management and possession of the ship.

Negotiable bills of lading were issued by the United States Transport Company, providing, among other things, "full rate to destination and all advance charges against the goods are due and payable to the United States Transport Company, Inc., upon receipt of the goods by the latter, and any further sums becoming payable to the carrier hereunder, * * * and any payments made and liability incurred by the carrier in respect to the goods * * * shall be deemed fully earned and due and payable to the carrier at any stage before or after loading of the service hereunder, without deduction (if unpaid) or refund in whole or in part (if paid), goods or vessel lost or not lost, and the carrier shall have a lien on the goods," etc. After the vessel left Mobile, the Transport Company demanded of, and was paid, the freight charges by libelants, but at Los Angeles on May 8th, before delivery of the freight, the United States, acting through the Shipping Board, seized the ship, and exacted and was paid a second freight charge by libelants. The suit is to recover from the United States the money paid to the Transport Company.

Attached to the bills of lading issued to

*Rehearing denied August 6, 1928.

libelants by the Transport Company were assignments with the name of the assignee left blank, made by the Transport Company, of its rights to the collection of freight due or to become due under the bills of lading. These assignments were forwarded to a bank in Los Angeles, with instructions to collect from libelants the amount of freight due from libelants for transporting the shipments. In order to release their goods, libelants had to pay the bank the freight charges, and, upon making such payments, libelants received the bills of lading. Subsequently, in foreclosure proceedings instituted by the United States in the federal court for the Eastern district of Virginia, the ship was sold to satisfy the mortgage debt due to the United States. A deficiency remained unpaid. Virginia Shipbuilding Co. v. U. S. Em. Fleet Corporation (C. C. A.) 22 F.(2d) 38; United States v. Virginia Shipbuilding Co. (D. C.) 292 F. 440; Id. (D. C.) 11 F.(2d) 156.

The evidence disclosed that in March, 1920, a general managing agency and operating contract between the Fleet Corporation, as owner, and the Transport Company, as managing agent, had been made, whereby the Transport Company was made agent of the Fleet Corporation as to management, operation, and conduct of the business of such vessels as the corporation then assigned or might thereafter assign to the agent for such purposes. The agent was to collect "at the proper time" all freights; also, to see that all freight was prepaid, except when otherwise instructed by the Fleet Corporation, or where the prevailing custom was to the contrary, in which case utmost diligence should be exercised by the agent as to acceptance of cargo and collection of freight money; to issue bills of lading in usual form, which should reserve to the Fleet Corporation lien adequate for its protection; to deposit all money collected in behalf of the Fleet Corporation as a separate trust fund in the name of the United States Shipping Board Emergency Fleet Corporation, which moneys should be the property of the corporation, to be accounted for, subject to check by the corporation as well as by the agent.

But prior to the date of the creation of that agency, under authority of a resolution of the Shipping Board, passed November 20, 1919, the Anna E. Morse was transferred to the Transport Company, under the same terms as other ships had been transferred to the Shipbuilding Company, by agreement of September 25, 1919. The receipt given by the Transport Company for the Anna E. Morse recited that delivery of the vessel was in pursuance of contracts between the Shipping Board Emergency Fleet Corporation and the Virginia Shipbuilding Company, and that delivery was "pending sale." The contracts referred to were made September 25, 1919, and July 19, 1920, respectively, between the Virginia Shipbuilding Company, party of the first part, the United States Shipping Board Emergency Fleet Corporation, party of the second part, and the United States Shipping Board, party of the third part.

It is unnecessary to state the particulars of those contracts. They have been carefully examined and construed in the District Court for the Eastern District of Virginia in Virginia Shipbuilding Corp. v. United States Shipping Board Emergency Fleet Corporation and Groton Iron Works and United States v. Virginia Shipbuilding Co. et al., 292 F. 440, affirmed (C. C. A.) 22 F.(2d) 38, certiorari denied 48 S. Ct. 305, 72 L. Ed. ——, as, in effect, sales of the vessels Anna E. Morse and others to the Shipbuilding Company by the government, with a mortgage by the Shipbuilding Company on the vessels for the purchase price. That view we agree with, and we think the Transport Company, transferee, was bound by such pertinent obligations as had been undertaken by the Shipbuilding Company by the terms of the contract of July 19, 1920, in which was a provision that the purchasing company should "account for or cause to be accounted for, the revenues of said vessels in the manner provided" in the "form of agency agreement for the operation and management" of the vessels of the Fleet Corporation. Thus, though the ship had been sold and delivered before March, 1920, the managing agreement of that date became effective as to the manner of accounting for revenues. But, because of the sale, the relationship between the vendor and vendee was necessarily so changed that the purchaser and its transferee were no longer mere agents of the United States, operating the ship solely for the vendor's benefit, but were owners.

The Transport Company, from the time the vessel was delivered to it, received and retained her entire operating revenues. Therefore, after the execution of the contract of September 25, 1919, the government became in effect a mere creditor, "holding title to the ships and ship materials as security for the money which it had advanced to the Shipbuilding Corporation and bound to surrender its rights in the ships and ship materials when the indebtedness due it should be repaid or funded, in accordance with the pro-

visions of the contract" (Virginia Shipbuilding Co. v. United States, supra), the buying company to account to the government for the revenues of the vessel in the manner provided under the agency agreement, such revenues to be used for financing the construction of certain then uncompleted vessels, and with the further provision that, upon the transfer of the ship to the nominee of the Shipbuilding Corporation, title was to be deemed effective as of the original dates of delivery thereof to the company.

The contract was not a mere executory agreement, but, as held by the court in the cases cited, was one for reimbursement, under which the ships were to be taken over by the Shipbuilding Company "and mortgages executed thereon in liquidation of the debt due the government," the corporation being vested with a substantial equity in the ships, subject to the legal title retained in the government as security for the debt due it. Under the facts stated, the question arises: What, if any, rights existed in the mortgagee in the pending freight of the voyage after seizure of the ship with the cargo aboard?

[1] In passing, we give little heed to the point, suggested by the appellee, that the assignments by the Transport Company were of no effect, because they failed to express a consideration and to name an assignee. No particular form is essential to constitute a valid assignment. It was sufficient that there was a delivery of the bills of lading to the bank at Los Angeles. Aldridge Lumber Co. v. Graves (Tex. Civ. App.) 131 S. W. 847; Small v. Smith, 120 Minn. 118, 139 N. W. 133; 5 C. J. p. 905.

[2-4] It is true that the covenants of the mortgage to the United States, executed by the Shipbuilding Company, purchaser, and binding upon the nominee, applied to the whole of the ship, with all her appurtenances "and the earnings, income, revenue, issues and profits of said vessel." But the word "freights" is not included. Considering the importance of the freights, omission to include them specifically would indicate that they were not specifically contemplated, and were not included in the mortgage, but that only net income was intended to be embraced in earnings, issues, and profits. Freights of the Kate (D. C.) 63 F. 707.

As a general rule, the right to the freight is incidental to the ownership of a vessel, and the owner is the one who has the right to the earnings made by the ship. There are exceptional cases in law and equity where distinctions are made between ownership of the vessel and the right to the freight, but they do not lessen the force of the usual rule. The principle stated does not conflict with the recognized view that in equity there may be an assignment of freight to be earned, as may be agreed upon in the contract for the hire of the ship between the owner and the assignee. The shipper or consignee of freight, who has the benefit of the contract, may ordinarily transfer it to another; yet the right to the freight as an incidental right to the vessel no one, except the owner of the ship, can assign. Lindsay v. Gibbs, 22 Beav. 522; In re Atlantic G. & P. Co. (D. C.) 289 F. 145. Here, at the time of the assignment and long before, the Transport Company, owner of the ship, was in possession prosecuting a voyage. And, no fraud or bad faith appearing in connection with the transaction, we cannot see that the mortgagee, not having taken possession of the ship, acquired any interest or lien upon the freight assigned. Carver on Carriage by Sea, § 592; Lindsay v. Gibbs, 52 Eng. Rep. 22 Beav. 522; Keither et al. v. Burrows, 3 Aspenwald Mar. Cas. (N. S.) 481.

In Gilman et al. v. Ill. & Miss. Telegraph Co., 91 U. S. 603, 23 L. Ed. 405, the court cited Chinnery v. Black, 3 Doug. 391, a case where the mortgagor of a ship sued for freight earned after the mortgage was given, but unpaid, and quoted Lord Mansfield as follows: "Until the mortgagee takes possession, the mortgagor is owner to all the world, and is entitled to all the profit made." The court held that the possession of the railroad, which had pledged its income, drew after it the right to receive and apply the income, and that, if the mortgagees were not satisfied, they had the remedy in their own hands, and could at any moment invoke the aid of the law, or interpose themselves without it. Freights of the Kate, supra; In re Atlantic G. & P. Co., supra; Brown v. Tanner, L. R. 3 Ch. App. 597.

In Merchants' Banking Co. v. Cargo of the Afton (C. C. A.) 134 F. 727, the court said there was no doubt that a mortgagee of a ship acquires no right to freights which have become payable and have been received by the mortgagor before possession is taken, although for the voyage then current.

Our opinion being that, the mortgagor having had dominion of the ship with regard to receipt and rates of freight to be earned by its employment, the mortgagee, until it took possession, did not obtain by the mortgage alone a right to the freight that had been paid. It follows that libelants should recover.

The decree is affirmed.