**UNITED STATES of America,**
**Libelant,**

v.

**F/V GOLDEN DAWN, her engines, etc.,**
**Respondent.**

**No. 63A 549.**

United States District Court
E. D. New York.

Sept. 30, 1963.

Harry T. Kirp, New York City (Irving Schneider, New York City, of counsel), for petitioner Raytheon Co.

Louis E. Greco, New York City (Joseph P. Hoey, U. S. Atty., of counsel), for libelant.

DOOLING, District Judge.

Petitioner Raytheon seeks to intervene in the Government's suit in admiralty to foreclose its preferred ship mortgage on the fishing vessel GOLDEN DAWN and to reclaim from the vessel, free of the preferred ship mortgage, certain Echo-depth Sounding Equipment known as the "Fishfinder" which Raytheon allowed to be installed on the GOLDEN DAWN under a lease in 1956, about a year before the preferred ship mortgage was executed. Raytheon asserts that the Fishfinder is its property, that the Government was on notice of that fact from the nameplate and property tag on the Fishfinder, stating Raytheon's ownership, and that, whether or not the Fishfinder is functionally integral to the vessel and a part of the tackle, apparel and furniture of the GOLDEN DAWN in function and purpose, it did not become a part of or appurtenant to the vessel and is not subject to the preferred ship mortgage.

The petition must be granted. No statutory provision affects Raytheon's title to the Fishfinder, and it is good against a preferred ship mortgage having no status other than that given to it by 46 U.S.C.A. §§ 922, 953, 974.

The facts are plain: the Fishfinder was originally leased and installed under date of March 13–23, 1956; that lease was a genuine lease for five years at $97 a month; there was in it no option in the fisherman to take title to the Fishfinder nor any other indicant that the lease was a disguised security instrument.

In April 1957 $41,097.70 were lent to the GOLDEN DAWN'S owner by the

United States under the Fish & Wildlife Act of 1956 (16 U.S.C.A. § 742c), a note signed by the owner and his wife was taken for that amount, and the owner gave the United States a preferred ship mortgage of the GOLDEN DAWN embracing "the whole of the said vessel, together with all her engines, machinery, masts, bowsprits, boats, anchors, cables, chains, rigging, tackle, apparel and furniture and all other appurtenances thereto appertaining and belonging, and also any and all additions, improvements and replacements hereinafter made in or to said vessel, or any part thereof, or in or to her equipment and appurtenances aforesaid". In the mortgage the owner promised not to create, incur or permit to be imposed on the vessel any liens whatsoever except for crew's wages and salvage and promised not to sell, transfer or mortgage the vessel or any interest in it without the consent of the United States; the owner was permitted to charter the vessel to citizens of the United States "for uses lawful for American vessels and subject to all the provisions of this mortgage".

About five years later, in January 1962 there was a fire aboard the vessel; the Fishfinder was removed and rebuilt by Raytheon and then was returned to the vessel under a new or renewal lease (substantially in the same form as the 1956 lease) dated July 13–31, 1962, again reserving a rental of $97 a month for five years.

There is presently on the Fishfinder a legend "Property of Raytheon Company. Not to be sold or moved." The Raytheon leases provided that "Neither the nameplate nor the property tag on the equipment shall be removed or modified, nor shall the equipment be removed from the place where installed under Company's supervision without the written consent of Company * * *. It shall not be transferred or delivered or sub-leased to any other person or corporation and this lease shall not be assigned by Lessee; and if the lease be so assigned either by Lessee's own act or by operation of law, it shall thereupon terminate * *.

Lessee shall not suffer any * * * execution * * * to be levied on said equipment, and shall immediately notify Company of any attempt to make such levy and of any attempt to levy upon * * or libel the vessel".

It has been the practice of Raytheon to affix the property tag quoted above to leased equipment. Although the Small Business Administration made a financial investigation of the owner before the grant of the Fish & Wildlife Act loan and then inventoried the vessel's equipment as including the Fishfinder, neither the report of financial investigation nor the list of equipment referred to any money due Raytheon or to any interest it had in the Fishfinder. The report and inventory cannot, however, be taken to imply that the property tag was not then on the equipment and the indication that there was no "debt" due Raytheon does not imply that no lease was in effect. There is not sufficient evidence to meet petitioner's evidence that the property tag was observably in place at all material times and that the leases were successively in force from March 1956 to January 1962 and from July 1962 to the date of the Marshal's seizure of the vessel on May 11, 1963.

The GOLDEN DAWN has at all the times involved been a documented vessel of the United States and outside the excepted class of 46 U.S.C.A. § 922(a). It is not denied that the preferred ship mortgage of the Government is, generally, valid, enforceable, duly recorded with the Collector of the GOLDEN DAWN'S home port and duly endorsed on the vessel's documents and that notices and a certified copy of it have been duly kept aboard the vessel and with its documents. It is not denied that the Raytheon leases were executed by the parties, and it is not claimed that they were recorded—and it is not claimed—on the other side—that any provision of law requires that such leases be recorded, or that any provision of law contemplates recording such leases, or that any practice of recording them exists.

There is no evidence or claim that the Fishfinder is so embedded in the GOLDEN DAWN that to remove it would damage the vessel. Its connection with the vessel is functional; it appears from the Government's affidavit that fishing vessels are commonly equipped with Fishfinders or similar equipment that has been purchased or leased by the shipowner; it is said that the Government has financed the purchase of such equipment and also, on request, would generally exclude such leased equipment from the lien of its preferred ship mortgages. While detail is lacking, it must be taken as agreed ground that such equipment is, specifically, common fishing vessel equipment installed in fishing vessels to improve their functioning as fishing vessels when they are on fishing voyages; the only denial—and it is mildly protested—is that the Fishfinder is navigational equipment.

While the test of what is, or may be part of the "tackle, apparel and furniture" of a vessel is complex and often difficult to apply, there can be no question that such removable, entitatively self-complete equipment as that here involved is part of the "vessel, her tackle, apparel and furniture" when owned by the vessel's owner and, as here, used to further its particular objectives as the kind of vessel it is. The Witch Queen, D.C.Cal.1874, 30 Fed.Cas. 396, 398, (No. 17,916); The Edwin Post, D.C.Del.1882, 11 F. 602; The Merrimac, D.C.Mass. 1886, 29 F. 157; The Frolic, D.C.R.I. 1906, 148 F. 921; The Geisha, D.C.Mass. 1912, 200 F. 865, 870–873; The Augusta, E.D.La.1920, 15 F.2d 727; The Huntington Sanford, D.C.Mass.1947, 73 F.Supp. 67; Oceanic Fisheries, Inc. v. The John Michael, W.D.Wash.N.D.1951, 97 F.Supp. 305; United States v. F/V Sylvester F. Whalen, D.C.Me.S.D.1963, 217 F.Supp. 916. And, as the last two cases cited have held, a ship mortgage would ordinarily embrace such equipment under general language that did not specifically describe the equipment. See, also, The Great Canton, S.D.N.Y.1924, 1924 A.M.C. 1074.

■ But that does not mean that such a mortgage as the present one reaches leased equipment that is aboard the ship when it is mortgaged or is added after the mortgage is given. It may be that the "preferred maritime liens" of 46 U.S.C.A. § 953, or some of them, attach even to leased equipment; they enjoy something more than or, rather, different from bare priority of rank and derivation from the general-owner interest; their origin (See, e. g., The Rebecca, D.C.Me.1831, 20 Fed.Cas. 373 (No. 11,619) and see on "notice" particularly, pp. 381–382; cf. The Philomena, D.C. Mass.1911, 200 F. 859, 861) makes it unsurprising that they tend toward reaching every sort of interest in the congeries of vessel, tackle, apparel and furniture that has been committed to the hazard of the vessel's voyages and enterprise without regard to ownership and sub-divisions of ownership interests. Cf. The Edwin Post, supra; The Frolic, supra; The Paraiso, W.D.Wash.N.D.1915, 226 F. 966; The Augusta, supra; Turner v. United States, 2d Cir., 1928, 27 F.2d 134 aff'g. S.D.N.Y.1926, 1926 A.M.C. 261. The present mortgage has the preferred status defined in 46 U.S.C.A. § 953 and the access to admiralty for enforcement granted to it by 46 U.S.C.A. § 951; it has not the nature of a preferred maritime lien nor does it operate as they do; it remains a security instrument pledging, essentially, the mortgagor's interests of ownership for the payment of his —not the ship's—debts. Nothing in the nature of the ship mortgage, nor in the terms of its statutory implementation, suggests that its lien should extend to what the mortgagor did not own and had no right to acquire.

Cases dealing with leased equipment aboard vessels, or equipment the title to which is equally distinctly separate from the title to the vessel, have gone far to protect the title of the owner of the equipment. In The Merrimac, supra, the Court awarded a seine boat to its owner even as against preferred maritime lienors of the vessel with which it func-

tioned although the Court was satisfied that the seine boat, if owned by the vessel owner, would have been appurtenant to the vessel; the Court emphasized that such divided ownership was common and the seine boat was, then, customarily accorded a share of the catch. [Cf. The Geisha, supra, 200 F. at 872–873 (as to a seine purser; implicitly rejects The Merrimac where preferred maritime lienors are concerned).] The Mildred, C.C.E.D. Mich.1890, 43 F. 393 achieved the same result as to leased wrecking equipment by emphasizing removability and the absence of any intention to make the equipment a "fixture" of the vessel; the Court thought it would be throwing needless obstacles in the way of maritime commerce to make it impossible for a shipowner to hire—or an equipment owner to lease—equipment except at the risk of subjection to the debts of the vessel. San Diego Tr. and Svgs. Bank v. Linda Lee, S.D.Cal.S.D.1947, 1949 A.M.C. 324 awarded leased radio equipment to the lessor, apparently as against a mortgagee, without discussion. National Bank of Commerce of Seattle v. John T, W.D. Wash.S.D.1947, 1949 A.M.C. 328 similarly awarded submarine signal equipment to its lessor as against a mortgagee of the vessel. W. R. Grace & Co. v. Charleston Lighterage & Tr. Co., E.D.S.C.Ch.D. 1951, 95 F.Supp. 249, employing the analogy of the modern law of fixtures as developed in the law of real property, accorded controlling weight to the inferred intention that leased removable equipment was not to accede to the vessel so as to become subject to the *in rem* claims of those who lost cargo in an earlier sinking of the vessel; the Court noted that the lessor of the equipment—a hoist and derrick—was not aware of the impending libels based on the cargo claims.

The notion that one who permits his equipment to become integrated with the functioning of a vessel owned by another subjects it to the maritime liens that accrue against the vessel finds imperfect expression in the cases certainly (E. g. The Edwin Post, supra, 11 F. at 605, 606; The Frolic, supra, 148 F. at 923–924— "But the reservation of title [to a chronometer] is not necessarily inconsistent with the grant of such rights of use in furtherance of the service of the vessel as makes an article an appurtenance of the ship, as distinguished from an instrument appertaining to the personal service of the navigating officer. * * * the question of title becomes immaterial, if they have in fact consented to its use as an appurtenance of the vessel."; The Hope, D. Mass. 1911, 191 F. 243, 246; The Paraiso, supra; The Augusta, supra; Turner v. United States, supra. But cf. The Merrimac, supra; The Mildred, supra; W. R. Grace & Co. v. Charleston Lighterage & Tr. Co., supra). And the expressions used may be broad enough to imply that no distinction would be drawn if the contest were against a mortgagee. Cf. United States v. F/V Sylvester F. Whalen, supra; First Suffolk Nat'l Bank of Huntington v. The Air Brant, E.D. N.Y.1954, 125 F.Supp. 709. Nevertheless the principle is plain and, if it be the case that a lessor's title fails as against the true maritime "liens" of tort claimants, seamen seeking their wages and those who furnish necessaries to the vessel when she is at a strange port (cf. 46 U.S.C.A. §§ 971–973), there is no reason to extend it beyond that to the unanalogous case of the preferred ship mortgage.

The case is not one of rival "priorities"; the cases involving conditional sales contracts do involve priorities only. It is somewhat difficult to understand that the conditional sales cases have usually been disposed of without reference to 46 U.S.C.A. § 921 (which, with its predecessors, including R.S. § 4192, goes back to 1850), presumably because of the modest language problem; but, at least where the cases are not decided on the ground that the equipment is not appurtenant, the unrecorded conditional sales contracts have not presented much resistance either to maritime liens or ship mortgages. The Hope, D.Mass.1911, 191 F. 243; The Katherine, E.D.La.1926, 15 F.2d 387; The Showboat, D.Mass.1930,

47 F.2d 286; First Suffolk Nat'l Bank of Huntington v. The Air Brant, supra; cf. National Bank of Commerce of Seattle v. John T, supra, 1949 A.M.C. at p. 329; Ellis v. Rickett, 4th Dept. 1917, 177 App. Div. 411, 164 N.Y.S. 243. But see The Diane, S.D.Fla.1942, 45 F.Supp. 510.

The Hirondelle, S.D.Ala.1937, 21 F.Supp. 223, arose on findings of fact so special that it involves little of relevant principle; it appears to imply that if the question had been one of "priorities" rather than of a separation of ownership for the performance of a business function separate from the ship's business, different considerations might have been invoked. Learned v. Brown, 5th Cir., 1899, 94 F. 876, 883–884 likewise arose on facts too specialized to give its holding any range of application. The Joseph Warner, D.Mass.1939, 32 F.Supp. 532, applied the real estate "fixture" analogy in holding that where an owner placed equipment aboard his ship that contributed to the efficiency of its functioning, the owner could not, as against a prior mortgagee of the vessel, remove the equipment even though removal without material damage to the vessel was feasible; no separation of ownership was involved. The Huntington Sanford, D.Mass.1947, 73 F.Supp. 67, is to the same effect.

United States v. F/V Sylvester F. Whalen, supra, can be differentiated as dealing with navigational equipment and as dealing with a mortgage differing from the present one in that it expressly mortgaged "fishing equipment"; the decision was however, put on the ground that if the equipment was truly appurtenant (and the Court found that it was), it fell within the embrace of the mortgage notwithstanding that the shipowner was only a lessee of the equipment; the Court accorded the ship mortgage the status of a strict maritime lien rather than treating it as a non-maritime security device that has been given certain statutory implementation. Cf. Gilmore & Black, The Law of Admiralty, 1957, 568–570, 615, 637.

It is concluded that the ship mortgage does not extend to Raytheon's Fishfinder and that the Fishfinder has not become a part of the GOLDEN DAWN, her tackle, apparel and furniture. It should not, therefore, be embraced in the sale under the ship mortgage but should be reserved from the sale, with permission to petitioner to remove it from the vessel. If the parties wish to agree on a sale of the vessel with the Fishfinder aboard and on an allocation of value to the Fishfinder, they are free to do so.

Settle order on five days notice.