**In re LEVY–MELLON MARINE, Debtor.**

**Bankruptcy No. 485–00246.**

United States Bankruptcy Court, W.D. Louisiana.

March 21, 1986.

J. Christopher Kohn, Tracy J. Whitaker, and James F. Wallack, Washington, D.C., for Maritime Administration.

Philip K. Jones, Don K. Haycraft, Liskow & Lewis, New Orleans, La., for debtor in possession.

## OPINION

RODNEY BERNARD, Jr., Bankruptcy Judge.

This matter comes before the court on motion of the United States on behalf of the Maritime Administration of the Department of Transportation [MARAD]. MARAD seeks a determination that it has a security interest in the accounts receivable generated by several of the debtor's vessels. MARAD bases its claim on a preferred fleet mortgage which it holds on those vessels. The parties stipulate that if such a security interest does exist, the debtor will be obliged to provide MARAD with adequate protection. Upon the agreement of the parties, no hearing was held in this matter, and it will be decided on the basis of stipulations and written briefs.

MARAD contends that the vessels' charter hire [referred to throughout as "freights". *See* Langley, *Common Carriage of Cargo*, 229 (1967)] constitutes a part of those vessels, and is thus subject to MARAD's mortgage. The debtor, on the other hand, argues that a preferred ship mortgage is inherently different from a maritime lien, which might extend to freights, and that in order for a preferred ship mortgage to encompass freights, it must explicitly state that it does so. Of course, of primary significance in this case is the fact that the mortgage in question does not specifically purport to grant a security interest in freights, charter hire or accounts receivable. The mortgage states that MARAD has a security interest in the vessels,

> together with all [their] engines, boilers, machinery, masts, boats, anchors, cables, chains, rigging, tackle, apparel, furniture, capstans, outfit, tools, pumps, pumping and other equipment and all other appurtenances thereto now or at any time appertaining or belonging and whether on board or not on board and also any and all additions, improvements and replacements hereafter made in or to said vessels or in and to their equipment and appurtenances as aforesaid; and provided further that the foregoing shall not include any property other than the vessels.

The Ship Mortgage Act, 46 U.S.C. 911 *et seq.* itself does not provide that a preferred mortgage encompasses the vessel's freights. That Act provides only for a preferred mortgage—outranking most subsequent maritime liens—on "the whole of any vessel". 46 U.S.C. § 922. Therefore, this court must determine whether Congress intended a preferred ship mortgage on a "vessel" to encompass that vessel's "freights", or whether a preferred ship mortgage was intended to have the same status as a maritime lien, which in some circumstances *does* encompass freights.

As stated above, the Ship Mortgage Act does not specifically provide for a preferred ship mortgage to encompass freights. The Act was passed in 1920 in order to encourage vessel financing by giving a mortgage-holder who met certain requirements priority over subsequent maritime lien holders. *Rush v. Delaware & Chesapeake Steamship Co.*, 10 F.Supp. 497 (E.D.Pa.1935). The Act also provided that

such mortgages could be enforced through admiralty jurisdiction. Under common law, a mortgage was not within admiralty/maritime jurisdiction. Since the Ship Mortgage Act is in derogation of the common law, and creates a remedy that did not previously exist, the Act must be strictly construed according to its own terms. *Netherlands Ship Mortgage Corp. v. Madias,* 554 F.Supp. 375, 379 (S.D.N.Y.1983). There is no specific provision in the Act defining "the whole of any vessel" to include "freights". Nor does the jurisprudence in this area of the law shed a great deal of light on this particular subject. The parties have not cited, nor has the court been able to find, any cases clearly deciding the issue at hand.

For example, both parties cite *Rush, supra,* favorably. In that case, the mortgage did contain a specific pledge of freights. On the other hand, the court stated that "[f]reight earnings are a part of the vessel as much as the ship's tackle." *Id.* at 501. However, the real issue in *Rush* was whether the mortgage met the requirements of the Act to have preferred status, so the quoted statement is, at best, *dicta.* Further, when read in context, the *Rush* court seems to have meant that a pledge of earned freights *could* be made in a ship mortgage, not that such a pledge was unnecessary. Thus, this court is not enlightened by the *Rush* case, and finds it unpersuasive on either side of the issue at bar.

There is case authority suggesting that in the absence of an express agreement, a foreclosing mortgagee is not entitled to earned freights, and that those freights may be pledged by the vessel's owner to another. *U.S. v. Sterling,* 22 F.2d 323 (S.D.N.Y.1927). *See also In re Atlantic Gulf & Pacific Steamship Co.,* 289 F. 145 (D.Md.1923), *aff'd* 3 F.2d 438 (4th Cir.1925). MARAD asserts that these cases are not *apropos* to this inquiry because there was no assignment of freights to a third party. That contention does not take into account section 544 of the Bankruptcy Code, which provides that a trustee, or a debtor-in-possession as provided by section 1107 of the Code, has the status of a perfect lien creditor as of the date of the petition. Thus, the Code itself provides a kind of "assignment" of all the debtor's assets to and for the benefit of the unsecured creditors. Therefore, this court considers the *Sterling* and *Atlantic Gulf* cases persuasive, though not binding, authority for the proposition that freights are not impliedly included in a preferred ship mortgage as part of a "vessel", but must be explicitly assigned.

Further, in *Layne & Bowler Corp. v. U.S. Shipping Board Emergency Fleet Corp.,* 27 F.2d 39 (9th Cir.1928), the mortgage, by its own terms, applied to the ship, her appurtenances, "and all the earnings, income, revenue, issues and profits of said vessel". *Id.* at 41. The court held that such language did not include freights, because the word "freights" was not used. The court reasoned that given the importance of the freights, failure to include them specifically indicated that the parties did not intend to include them, but contemplated only the inclusion of "net income". *Id.* The *Layne & Bowler* court goes on to say that freights are an incidental right to a vessel, which no one save the owner can assign. The court concluded that the mortgagee had acquired no interest in the freights.

Although these cases are somewhat muddled, they do seem to indicate a judicial recognition that freights are not necessarily an inherent part of "the whole of any vessel", but are a separate and distinct asset, and must be specifically pledged.

Most of the authority cited by MARAD in its memoranda dealt with maritime liens rather than ship mortgages, and are thus not pertinent to this inquiry. MARAD does, however, cite *Gulf Oil Trading Co. v. Creole Supply,* 596 F.2d 515 (2d Cir.1979). In that case, the court stated that freights "generally belong to the mortgagee as a result of foreclosure, for freights may be the subject of an *in rem* proceeding in admiralty." *Id.* at 521. Although that statement seems pertinent when taken out of context, there are several problems with the *Gulf Oil* case. First the quoted portion

is a bald statement that is purely *dicta.* Second, in the *Gulf Oil* case the freights were the property of the mortgagee because a Bahamian foreclosure had eliminated all other claimants. Finally, in reaching its conclusion the *Gulf Oil* court relied solely on *Schirmer Stevedoring Company, Ltd. v. Seaboard Stevedoring Corporation,* 306 F.2d 188 (9th Cir.1962) which dealt exclusively with a maritime lien, not a ship mortgage. For those reasons, this court finds *Gulf Oil* valueless in deciding the issue at hand.

■ In addition, in considering this matter, this court notes the general policy of the Bankruptcy Code and the Ship Mortgage Act promoting notice to subsequent creditors of encumbrances of assets. Based upon that policy, the lack of specific provision in the Act, and the foregoing case authority, this court concludes that without a specific pledge of freights, the Ship Mortgage Act itself does not operate to automatically extend a mortgage to a vessel's earnings.

■ MARAD also argues that a ship mortgage has the status of a maritime lien, i.e., that the same sort of all-encompassing lien is created by a ship mortgage as is created by a maritime lien. For the following reasons, this court finds this assertion to be without merit.

Although MARAD cites a number of cases holding that freights are subject to maritime liens, no authority equating ship mortgages and maritime liens is proffered. The debtor, on the other hand, cites several cases which, although not directly on point, tend to indicate that a preferred ship mortgage is not identical to a maritime lien. In *C.I.T. Corp. v. Oil Screw Peggy,* 424 F.2d 767 (5th Cir.1970) and *United States v. Golden Dawn,* 222 F.Supp. 186 (E.D.N.Y. 1963), the courts considered the analogous issue of whether a preferred ship mortgage extends to leased equipment which was on board the mortgaged vessel. In *Golden Dawn,* the court noted that a maritime lien might well attach to leased equipment, but held that a ship mortgage did *not* include such equipment. The court explained that *maritime liens* "tend toward reaching every sort of interest in the congeries of vessel, tackle, apparel and furniture that has been committed to the hazard of the vessel's voyages and enterprise without regard to ownership and subdivisions of ownership interests." 222 F.Supp. at 188. A *ship mortgage* on the other hand, is unlike a maritime lien in nature and operation; "it remains a security instrument pledging, essentially, the mortgagor's interests of ownership for the payment of his—not the ship's—debts." *Id.* In *Oil Screw Peggy* the Fifth Circuit cites *Golden Dawn* favorably and adopts its reasoning, reciting the above-quoted passages making the distinction between a pledge for payment of the vessel's owners' debts and those incurred by the vessel itself.

MARAD's contention is that because the creation of both preferred ship mortgages and maritime liens were intended to encourage the extension of credit to the maritime industry, their treatment and effect should be identical. However, MARAD overlooks the differing types of credit each of those devices was intended to promote. A preferred ship mortgage was intended to promote capital investment and financing, and thus such mortgages have priority over such claims as those for supplies or wages. A maritime lien, on the other hand, is intended to provide a vessel with a means of obtaining credit when she is far from her home port. Thus, 46 U.S.C. §§ 921 & 922 require that preferred mortgages be recorded and posted on the vessel, enabling potential lienholders to make some determination of available credit. The difference between the purposes for these two types of credit argues for *different,* not identical, treatment. Like any other form of recordation, this one is intended to inform potential subsequent creditors. Accuracy and specificity in what is subject to the mortgage is essential. Thus, this court finds MARAD's assertion that preferred mortgages and maritime liens should have identical effect because of their underlying purpose to be without merit.

The court in *Golden Dawn* stated that "if it be the case that a lessor's title fails as against the true maritime 'liens' of tort

claimants, seamen seeking their wages and those who furnish necessaries to the vessel where she is at a strange port, there is no reason to extend [that doctrine] beyond that to the unanalogous case of the preferred ship mortgage." 222 F.Supp. at 189. This court is convinced that the same reasoning applies in this context, and especially in light of the Fifth Circuit's opinion in *Oil Screw Peggy*, the court finds that preferred ship mortgages are not coextensive with maritime liens.

### Conclusion

The court finds that "freights" or "charter hire" are not an integral part of a "vessel" within the meaning of The Ship Mortgage Act. Thus, a pledge of freights will not be implied, but must be specifically included in the mortgage. Further, the court finds that those assets reached by ship mortgages and maritime liens, respectively, are not coextensive, but are distinct credit vehicles with distinct intents and effects. Therefore MARAD's ship mortgage does not, in this case, encompass the freights of the vessels in question.

A judgment to this effect will be signed upon submission.