Barry Elkin, St. Petersburg, Fla., for Rozier Machinery Co.

**In re William O. CHISHOLM, Debtor.**

**Bankruptcy No. 82–2040 BK–T–11.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Sept. 10, 1985.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the matter under consideration is an Objection to the Claim of Rozier Machinery, Inc. (Rozier) filed by William O. Chisholm, the Debtor. The facts relevant to a resolution of the controversy under consideration can be summarized as follows.

The Debtor is the President of A & B Grading and Trucking Service, Inc. (A & B), a company engaged in heavy construction excavation in and around Tampa, Florida. Rozier is a distributor for heavy equipment manufacturers. In October of 1980, the Debtor contacted Rozier and inquired into the possibility of leasing equipment needed by A & B in order to complete a job in Brandon, Florida. Because of the weak financial condition of A & B, Rozier declined to lease any equipment to A & B unless the Debtor would personally guaranty the obligations of A & B. In order to obtain the equipment for A & B, the Debtor, on November 1, 1980, executed in favor of Rozier an unconditional continuing guarantee by which the Debtor agreed to make good on the obligation of A & B should A & B default.

Although Rozier had stated that they would first require the Debtor's guarantee,

Rozier did deliver two Caterpillar 225 Excavators (Excavators) to A & B in late October 1980. On December 15, 1980, A & B leased from Rozier a Caterpillar 950 Wheel Loader (Wheel Loader) and also executed a purchase option on the wheel loader. On February 6, 1981, A & B leased from Rozier a Caterpillar D3 Tractor (Tractor) and a 3P Bulldozer (Bulldozer) and executed a purchase option as to these pieces of equipment as well. All of the leased equipment was put to use by A & B, however, A & B eventually fell behind on its payments.

On September 28, 1981, A & B, through the Debtor as President, executed a promissory note in favor of Rozier in the principal amount of $32,471.91. The note was to be paid in monthly installments and was executed in order to satisfy certain arrearages owed by A & B to Rozier. The promissory note did not cover arrearages owed for the wheel loader, bulldozer or tractor, but did cover arrearages on the two excavators. After making payments for some time on the note and lease agreements A & B again defaulted. Rozier now seeks to hold the Debtor liable for the obligations of A & B based upon his guarantee.

■ The Debtor contends that on November 6, 1980, just six days after executing the unconditional continuing guarantee, that he revoked the guarantee by orally communicating his intention to do so to a Mr. Uphoff, an employee with Rozier with whom the Debtor had frequently dealt. Therefore, claims the Debtor, he is only liable for that portion of the unpaid promissory note which represents payments due for the two excavators. Rozier claims that the Debtor never notified Mr. Uphoff of his revocation and that even if he had, Uphoff had no authority to accept such a revocation. Uphoff substantiated Rozier's claim at the final evidentiary hearing by stating that for as long as he had worked for Rozier he had never spoken with anybody about revoking a guarantee. In addition, Rozier claims that the revocation was ineffective, even if it was given, inasmuch as the guarantee document itself states that it

must be revoked in writing if the revocation is to be effective.

Based upon the testimony presented at the final evidentiary hearing, this Court finds that the unconditional continuing guarantee was never revoked. The evidence was insufficient to convince this Court that the Debtor ever communicated his revocation to anybody employed by Rozier. In any event, such oral revocation would have been ineffective in light of the writing requirement set forth in the guarantee.

Lastly, the Debtor contends that the leases of the wheel loader, tractor and bulldozer were secured sales inasmuch as A & B executed purchase options together with the leases. As secured transactions, the Debtor contends that he was entitled to notice of the equipments' disposition in accordance with Fla.Stat. § 679.504(3) (1982), and that because Rozier failed to give any notice that he is not obligated to pay any deficiency. Rozier claims that the lease and purchase option contracts are not disguised secured sales, but are pure leases and therefore, that no notice was required. In addition, Rozier argues that even if the transactions were in fact secured sales, A & B and the Debtor waived the notice requirement of Fla.Stat. § 679.504(3) (1982) when the Debtor agreed to allow Rozier to pick up the equipment if Rozier would agree not to pursue an action for future lease payments.

■ This Court has considered the equipment lease agreements and the purchase option agreements and is satisfied that they are in fact secured sales. The principal test in determining whether a transaction is a secured sale or lease is the intent of the parties that the transaction have effect as a secured sale. *Bruce Lincoln-Mercury, Inc. v. Universal C.I.T. Credit Corp.*, 325 F.2d 2 (3d Cir.1963); *Matter of Equitable Development Corp.*, 617 F.2d 1152 (5th Cir.1980). A number of factors are to be considered by the Court in determining the intent of the parties. Those factors include whether the lessee is required to insure the goods, who has the

risk of loss, who must pay taxes, repairs and maintenance costs, whether the rental payments are roughly equal to the purchase price plus any interest, and whether normal warranties are excluded. White and Summers, *Uniform Commercial Code 2d edition,* § 22–3 (1980).

In the case at hand, A & B as lessee was responsible for the care and maintenance of the equipment, was required to insure the equipment, the warranties of merchantability and fitness for particular purpose were specifically disclaimed and the risk of loss was on A & B. In addition, the lease agreement states that the periodic rental payments shall be $2,658.35 *plus state sales tax* per month (emphasis added) for a period of 36 months. The total rental payments would therefore, be $95,700.60 plus state sales tax.

The purchase option states that the original cash purchase price is $87,845.00 and that upon exercising the option to purchase, rental payments made would be deducted from the purchase price and that the price would then be "increased by interest in an amount equivalent to that portion of each monthly rental payment, which would have been interest, had such payment in fact been monthly payment of principal and interest against a promissory obligation equal to the amount" of the purchase price "bearing interest at a rate of 18% simple." Comparison of the option price and purchase price together with consideration of the factors outlined above, leads this Court to the conclusion that the transaction was not a lease but a secured transaction. As such, A & B was entitled to notice of the sale of the equipment.

This Court finds no evidence that A & B or the Debtor waived notice of any sale or disposition of the equipment as required by Fla.Stat. § 679.504(3) (1982) and thus, any claim by Rozier for a deficiency must be denied. *Hepworth v. Orlando Bank and Trust Co.,* 323 So.2d 41 (Fla. 4th DCA 1975); *Barnett v. Barnett Bank of Jacksonville,* 345 So.2d 804 (Fla. 1st DCA 1977). A separate final judgment will be entered in accordance with the foregoing.