In re LYKES BROS. STEAMSHIP CO., INC., Debtor.

AMERICAN PRESIDENT LINES, LTD., Plaintiff,

v.

LYKES BROS. STEAMSHIP CO., INC., a Louisiana corporation; Mitsui Engineering & Shipbuilding Co., a Japanese corporation; Mitsubishi Heavy Industries, Ltd., a Japanese corporation; Meridian Trust Co., a Pennsylvania trust company, as Trustee; Blue Water Associates, L.P., a Delaware limited partnership; the Chase Manhattan Bank, N.A., as Trustee; GATX Capital Corp., a Delaware corporation; GATX Financial Services, a Delaware corporation and Gilman Financial Services, Inc., a Delaware corporation, Defendants.

LYKES BROS. STEAMSHIP CO., INC., Counter–Plaintiff and Cross–Plaintiff,

v.

AMERICAN PRESIDENT LINES, INC., as Counter–Defendant,

and

Mitsui Engineering and Shipbuilding Co., LTD., a Japanese corporation; Mitsubishi Heavy Industries, Ltd., a Japanese corporation; Meridian Trust Co., a Pennsylvania trust company, as Trustee; Blue Water Associates, L.P., a Delaware limited partnership; the Chase Manhattan Bank, N.A., as Trustee; GATX Capital Corp., a Delaware corporation; and Gilman Financial Services, Inc., a Delaware corporation, Cross–Defendants.

Bankruptcy No. 95–10453–8P1.
Adversary No. 95–771.

United States District Court,
M.D. Florida,
Tampa Division.

Sept. 26, 1996.

See also, 196 B.R. 574.

Mark J. Wolfson, Foley & Lardner, Tampa, FL, K. Rodney May, Foley & Lardner, Orlando, FL, William Bates, III, McCutchen, Doyle, Brown & Enersen, L.L.P., San Francisco, CA, for APL.

Harley E. Riedel, Stichter, Riedel, Blain & Prosser, P.A., Tampa, FL, for Lykes Bros.

Glenn Siegel, Winthrop, Stimson, Putnam & Roberts, R. Simon/R.Cohen/L. Rutkowski, Seward & Kissel, Martin G. Bunin, Ried & Priest, L.L.P., New York City, Zala Forizs, Blasingame, Forizs & Smiljanich, P.A., St. Petersburg, FL, for Mitsui & Mitsubishi.

Robert Soriano, Carlton, Fields, Tampa, FL, for J.P. Morgan Delaware.

John D. Emmanuel, Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, FL, for Blue Water Parties.

Robert D. Drain, Alan Kornberg, Paul, Weiss, Rifkind, New York City, for Blue Water, Meridian.

Elizabeth Battle, Dewey Ballantine, New York City, for Chase Manhattan.

Paul S. Singerman, Miami, FL, for Creditors' Committee.

**AMENDED ORDER ON (1) MOTION OF MITSUI ENGINEERING & SHIPBUILDING CO.,LTD. AND MITSUBISHI HEAVY INDUSTRIES, LTD. FOR SUMMARY JUDGMENT (Doc. No. 40); and (2) DEBTOR'S MOTION FOR PARTIAL SUMMARY JUDGMENT , ON COUNT III OF ITS CROSS–CLAIM FOR DECLARATORY RELIEF TO DETERMINE THE EXTENT, VALIDITY, AND PRIORITY OF LIENS (Doc. No. 72); AND DEBTOR'S MOTION FOR PARTIAL SUMMARY ' JUDGMENT ON COUNTS V AND VI OF ITS CROSS–CLAIM FOR DECLARATORY RELIEF TO DETERMINE THE EXTENT, VALIDITY AND PRIORITY OF LIENS (Doc. No. 87)**

ALEXANDER L. PASKAY, Chief Judge.

This is an adversary proceeding in a yet-to-be-confirmed Chapter 11 reorganization case commenced by the Plaintiff, American

President Lines, Inc. (APL) against (1) Lykes Brothers Steamship Company, Inc. (Debtor); (2) Mitsui Engineering and Shipbuilding Co., Ltd. and Mitsubishi Heavy Industries, Ltd., (the Shipyards); (3) Meridian Trust Co., a Pennsylvania Trust Company, as Trustee (Meridian); (4) Blue Water Associates, L.P. (Blue Water); (5) The Chase Manhattan Bank, N.A., as Trustee (Chase); (6) GATX Capital Corp. (GATX Capital); (7) GATX Financial Services (GATX Financial); and (8) Gilman Financial Services, Inc. (Gilman). (Defendants Meridian, Blue Water, Chase, GATX Capital, GATX Financial and Gilman are collectively referred to as Meridian/Blue Water.)

The immediate matters under consideration are the following Motions: (1) Motion for Summary Judgment filed by the Shipyards (Doc. No. 40); and (2) two Motions for Partial Summary Judgment (Doc. Nos. 72 & 87) filed by the Debtor. All Movants contend that there are no genuine issues of material fact and that they are entitled to judgments as a matter of law on the issues germane to their respective motions.

## I. PROCEDURAL HISTORY

APL, in its Complaint as amended, claimed the right to deduct from the postpetition charter hire payments it was required to pay the Debtor, the charter hire payments the Debtor owed prepetition to APL, together with the cost of satisfying maritime liens affixed to APL's vessels while under charter hire to the Debtor. APL and the Debtor settled that claim and their joint Motion to Compromise was approved by this Court on April 4, 1996. Thus, there are no longer any unresolved issues between APL and the Debtor which require further consideration.

In due course, the Debtor filed its Answer to the Amended Complaint of APL coupled with a four-count Counterclaim against APL and Cross-Claims against the Shipyards and Meridian/Blue Water. The Debtor subsequently amended its Counterclaim and Cross-Claims and added three more counts, two of which, Counts V and VI, are presently under consideration in addition to the claim set forth in Count III of its original Cross-Claim.

The Debtor, in Counts I and II of its Amended Cross-Claims, challenged Meridian/Blue Water's claimed ownership of the four L-9 vessels. The Debtor sought a determination that the transaction concerning these vessels was not a sale by the Debtor to Blue Water and a lease-back to the Debtor of those same vessels, but rather a financing arrangement. The issue was presented for this Court's consideration by the Debtor's Motion for Partial Summary Judgment on Counts I and II of the Amended Cross-Claims. After having heard argument of counsel and having considered the briefs submitted in support of and in opposition to the Motion, this Court issued its Memorandum Opinion on April 8, 1996, (Doc. No. 97) in which it ruled that the Debtor's position was supported by the undisputed facts and the applicable law, and granted the Debtor's Motion. The Debtor has since informed this Court that Count IV of its Counterclaim against APL (turnover claim) and Count VII of its Cross-Claim against the Shipyards and Meridian/Blue Water (Postpetition transfers pursuant to § 549) have been settled. Accordingly, those claims will not be further considered.

This leaves for consideration Counts III, V and VI of the Debtor's Amended Cross-Claims against Meridian/Blue Water and against the Shipyards. In Count III of its Cross-Claims, the Debtor seeks a determination that whatever interests Meridian/Blue Water and/or the Shipyards claim in the postpetition charter hire payments due to the Debtor by APL are voidable and unenforceable against the Debtor by virtue of the strong-arm power granted to the Trustee, and in turn to the Debtor-in-Possession, by virtue of § 544(a)(1)(2).

In Count V of the Amended Cross-Claims, the Debtor contends that, assuming without conceding, Meridian/Blue Water and, in turn, the Shipyards, did acquire security interests in the charter hire payments under consideration, the same is unenforceable against the postpetition charter hire payments owed by APL by virtue of § 552.

The claim in Count VI of the Amended Cross-Claims is based on § 545 and, accord-

ing to the Debtor, to the extent the claim of the Shipyards is claimed to be a statutory lien, the same is voidable by the Debtor under this provision of the Bankruptcy Code.

In due course, the Shipyards filed their Motion For Summary Judgment directed to the claims of APL against them and also to the Cross–Claims contained in their Answer to the Debtor's Cross–Claims. Shortly thereafter, APL filed its Motion For Summary Judgment. As noted earlier, the claims between APL and the Debtor having been settled, this leaves for consideration the Debtor's Motion as it applies against Meridian/Blue Water and the Shipyards.

The initial Motion for Partial Summary Judgment of the Debtor was addressed to Counts III and IV of its Cross–Claim directed against Meridian/Blue Water and the Shipyards. Sometime later the Debtor filed its Amended Motion for Partial Summary Judgment, this one addressed to Counts V, VI and VII of its Cross–Claim again against Meridian/Blue Water and Shipyards. Although numerous other pleadings are of record, they are not relevant to the issues presently under consideration, i.e., what rights, if any, the Shipyards and Meridian/Blue Water have to the charter hire payments payable by APL to the Debtor; and, if the Shipyards or Meridian/Blue Water have any rights, whether those interests are junior to the interest of the Debtor.

## II. UNDISPUTED FACTS

At the time relevant, the Debtor was, and still is, the owner and operator of a fleet of ocean-going vessels, just as APL was and still is. On December 17, 1986, APL and the Debtor entered into reciprocal Bareboat Charter Agreements (Agreed Ex. H). Under these Agreements, APL chartered four L–9 vessels from the Debtor who, in turn, chartered three Seamaster Class vessels and one C–5 Class vessel from APL. The initial charters were for three-year periods with two successive three-year options, which APL exercised, the last of which expires this year. The current per diem charter hire the Debtor owes APL on each of the Pacesetters is $4,400. (Seamaster Charter § 1(c)). The current per diem charter hire APL owes the

Debtor on each of the L–9 vessels is $13,500. (Pacific Class Charter § 1(b)).

The L–9 vessels chartered by the Debtor to APL were constructed and financed by the Shipyards. Mitsui delivered three of the L–9's to the Debtor on March 30, 1987, and Mitsui delivered one to the Debtor on April 6, 1987. In connection with the financing, the Debtor executed promissory notes evidencing the principal amount owed to the Shipyards and granted Chase, as Trustee for the Shipyards, preferred ship mortgages on each of the L–9 vessels. The mortgage identified the collateral encumbered by the mortgage lien as the vessel, together with all of the boilers, engines, machinery, masts, spars, rigging, boats, anchors, chains, cables, tackle, apparel, furniture, fittings, and equipment and all appurtenances to the vessel. It did not cover any freight proceeds or freight charter hire payments, or other intangibles as permitted to be included in a preferred ship mortgage by 46 U.S.C. 31322(c)(1). While it is true that originally the Debtor did assign its interest in the charter hire payments received, and to be received in the future, to Chase as Trustee acting for the Shipyards, this security interest was replaced when the Debtor executed the second Assignment in favor of Meridian, acting as Trustee for Blue Water.

On June 30, 1987, the Debtor and Meridian/Blue Water entered into Owner Participation Agreements (Agreed Ex. A). Pursuant to these Agreements, Meridian/Blue Water purportedly acquired title to the four L–9 vessels and, in turn, leased back the same vessels to the Debtor under Bareboat Charter Agreements (Agreed Ex. B). These Agreements named Meridian, as owner and the Debtor as charterer.

At the time the Debtor entered into the Meridian/Blue Water transaction, the L–9 vessels were already under charter hire to APL. As a part of the overall transaction the Shipyards were granted an interest in the charter hire payments, which was a security interest governed by U.C.C., which they had prior to the Meridian/Blue Water transaction. It was recognized by counsel for the Shipyards that the collateral position of the Shipyards following the Meridian/Blue Water

transaction "would be identical" to their existing rights. Supplemental Horn Affidavit, Ex. B. (Summary), at pp. 2, 4, 7.

As part of the overall transaction, APL, Meridian, Blue Water and the Shipyards entered into an agreement pursuant to which APL agreed to make all charter hire payments due to the Debtor to be paid direct to such bank in Tokyo, Japan, as designated by the Shipyards, Meridian, Blue Water. The same document reassigned the interest of Meridian/Blue Water in the charter hire payments to the Shipyards. (Debtor's Exh. 20).

As noted earlier, the true nature of the Meridian/Blue Water transaction was resolved in favor of the Debtor by this Court's April 8, 1996, Order in which the Court held that the arrangement between the Debtor and Meridian/Blue Water was a financing transaction rather than a sale/leaseback arrangement, and the four L–9 vessels were owned at all times by the Debtor, notwithstanding the purported sale, and Meridian/Blue Water's interest was limited to one of a financier who entered into a financing transaction with the Debtor.

Also, as part of the transaction with Meridian/Blue Water, Debtor executed a document entitled "APL Charter Hire Assignment" (Agreed Ex. E). Under the terms of this Assignment, Debtor granted a security interest in the charter hire payment due to the Debtor from APL under its subcharter of the four L–9 vessels. The Assignment was executed by the Debtor on June 30, 1987 in favor of Meridian, not in its individual capacity, but solely as owner trustee under an "Owner Trust Agreement" for the benefit of the Owner Participant (Shipowner). The Assignment, before the granting part, recited, inter alia, that the Debtor already assigned previously its receivable due to it from APL under the charter hire of the four L–9 vessels to the Shipyards as of March 30, 1987 (Original Assignment). This assignment was terminated with the execution of the present assignment granted to Meridian. The interest assigned by the APL Charter Hire Assignment was "all right, title and interest" of the Debtor in all monies due, and to become due, to the Debtor under the APL charter hire of the four L–9 vessels assigned to the Shipowner, that is to Meridian, and not to the Shipyards whose previously granted assignment was terminated.

At the time of the execution of the relevant documents, Lykes was a duly organized and validly existing corporation under the laws of the State of Louisiana and maintained its principal place of business in New Orleans, Louisiana. The APL Charter Hire Assignment, the General Assignment of Freight and Assignment of Insurance (collectively referred to as "Assignments") had been duly recorded in the Conveyance Office for the Parish of Orleans, State of Louisiana. This is the only place where such recording is required under the laws of Louisiana and is to protect the security of the Assignments against claims of third parties. *See* Opinion Letter of R. Lawrence Kurt, counsel for the Debtor, dated July 2, 1987, addressed to Meridian Trust Company, Blue Water Associates L.P. (Agreed Exh. F). It is equally true, however, that in order to maintain the validity of the interest created against the claims of third parties, the Notices of Assignments of accounts receivable had to be reinscribed in the Conveyance Office for the Parish of Orleans five years from the date of the initial recordation.

It is without dispute that there was no re-recordation of the Assignments, as required by Louisiana law, after 1992 when the enforceability of the Assignments expired. Moreover, it is also without dispute that on December 5, 1994, the Debtor relocated to Florida and established its permanent headquarters in Tampa, Florida. Neither Meridian/Blue Water nor the Shipyards filed a UCC–1 Financing Statement with the Office of the Secretary of the State of Florida within four months after relocation, as is required for the perfection of a security interest by section 679.103(e), Florida Statutes (1992).

### COUNT III OF THE DEBTOR'S CROSS–CLAIM

In Count III of its Cross–Claim, the Debtor, relying on § 544 of the Code, attacks the claims of Meridian/Blue Water and the Shipyards as Cross–Defendants to the APL charter hire payments. The principal basis of its attack is based on the proposition that nei-

ther Meridian/Blue Water nor, in turn, the Shipyards have a perfected security interest in the APL charter hire payments, an interest which is superior to the interest of the ideal judgment lien creditor granted to a Trustee by § 544(a) and, in turn, to the Debtor–in–Possession by § 1107(a) of the Code.

■ This record leaves no doubt that to the extent the Meridian/Blue Water claim is a security interest, created initially under the laws of the State of Louisiana, it lost its enforceability due to Meridian/Blue Water's failure to reinscribe the same in the Conveyance Office for the Parish of Orleans within five years from the date of the initial recordation. Neither was there any perfection in Florida after the Debtor moved its headquarters to Tampa, Florida. There is nothing in this record to warrant the finding that there was a UCC 1—Financing Statement filed with the Office of the Secretary of State of this State perfecting a new security interest or perfecting the original security interest under the provisions of Fla.Stat. § 679.103(e) by filing the required document within four months after the Debtor relocated in Florida. Realizing the obvious, the Cross–Defendants contend that since the assignment of the charter hire payments due from APL to the Debtor did not transfer a significant part of the outstanding accounts of the Debtor, therefore, by virtue of § 679.302(e) no filing was required in order to perfect the security interest. This proposition is not supported by the record.

In this instance, the total receivables due to the Debtor from the initial three-year term of the APL Charter Hire totaled $45 million. With the two three-year extensions, the Debtor would earn $160 million. Based on the foregoing, this Court is satisfied that the Cross–Defendants' reliance on this provision of the UCC is not well-founded and the provision of this sub-clause of § 679.302 is not supported by this record. In sum, this record more than warrants the conclusion that ideal judgment lien status granted by § 544(a)(1) & (2) of the Code is superior to any unperfected secured interest and the Debtor is entitled to avoid the security inter-

est of Meridian and Blue Water in the APL charter hire payments.

## COUNT V OF THE DEBTOR'S CROSS–CLAIM

Having concluded that the security interest claimed by Meridian/Blue Water and in turn by the Shipyards is unenforceable against the Debtor acting as Debtor-in-Possession by virtue of § 544(a) and § 679.301(3) Fla. Stat., which also recognizes the senior position of a Trustee over unsecured security interests, ordinarily it would not be necessary to consider whether the security interest survived and remained enforceable against the charter hire payments which became due and payable to the Debtor after the commencement of this Chapter 11 case. Notwithstanding, this Court is satisfied that it is appropriate to give full consideration of all claims asserted by the Debtor, and the defenses to same, in the claim set forth in Count V of the Cross–Claim.

Under the Charter Hire Assignment dated June 30, 1987, the Debtor assigned to Meridian, acting as Trustee on behalf of Blue Water under the Owner Participation Agreement, its "charter hire and all other monies payable under the APL charter" for reassignment of "said interests to [the Shipyards] to secure payment of the Note."

It cannot be argued in good faith that rights to payment under a charter, or other contract involving the use or hire of a vessel and all rights incident to the charter, are not "accounts" within the definition of that term by § 679.106, Fla.Stat. Moreover, under the collateral assignment of the charter hire payments, and all the other documents evidencing the transaction between them, the Debtor and Meridian/Blue Water treated the charter hire payments as "accounts." For instance, the Notice of Assignment between the Debtor and the Shipyards dated March 30, 1987, describes the subject of the assignment as "accounts receivable." Consistent with the foregoing, the Cross–Defendants treated the charter hire payments due from APL as accounts, vis-a-vis third parties, e.g., Chemical Bank.

■ Based on the foregoing it is beyond legitimate debate that the lien claimed by Meridian/Blue Water and the Shipyards on the charter hire payments was created by a prepetition security agreement; thus, the lien is subject to the provisions of § 552(a). This Section provides:

### § 552. Postpetition effect of security interest.

(a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

(b) (1) ... if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, or profits of such property, then such security interest extends to such proceeds, product, offspring, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

(2) ... notwithstanding section 546(b) of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to amounts paid as rents of such property or the fees, charges, accounts, or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties, then such security interest extends to such rents and such fees, charges, accounts, or other payments acquired by the estate after the commencement of the case to the extent provided in such security agreement, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

In the present instance, while the claimed right to the charter hire payments was created by the Assignment executed June 30, 1987, thus prepetition, the Debtor had no right to collect charter hire payments from APL until each payment fell due under the terms of its charter hire with APL, that is, each month when the Debtor became entitled to the charter hire payments. From this it follows that by virtue of § 552(a) the prepetition interest of Meridian/Blue Water created by the Assignment, even if it did not fail due to lack of perfection, did not survive bankruptcy and is unenforceable against the postpetition charter hire payments.

This proposition is fully supported by case law. For instance, in the case of *In re Bering Trader Inc.*, 944 F.2d 500 (9th Cir. 1991) the court held that the prepetition security interest of a secured creditor encumbering the accounts which covered rents from one of the debtor's chartered vessels, did not extend to postpetition rents on the vessel under the Bankruptcy Code's exception extending prepetition security interest to postpetition proceeds, offspring, rents, or profits of encumbered property; *See also In re North Atlantic and Gulf Steamship Co.* 204 F.Supp. 899 (S.D.N.Y.1962) *aff'd sub nom. Schilling v. A/S D/S Dannebrog,* 320 F.2d 628 (2d Cir.1963) (trustee was entitled to postpetition charter hire payments and defeated a claimed maritime lien asserted by the owner of the vessel).

Having concluded that the charter hire payments were deemed to be encumbered by a lien created prepetition they are subject to the provisions of § 552(a), unless the interest claimed by Meridian/Blue Water is saved by Subclause (b) of § 552. *In re HRC Joint Venture,* 175 B.R. 948 (Bankr.S.D.Ohio 1994) *citing Bering Trader, supra; In re Cross Baking Co.,* 818 F.2d 1027 (1st Cir.1987); *In re Corpus Christi Hotel Partners, Ltd.,* 133 B.R. 850 (Bankr.S.D.Tex.1991); *In re Texas Tri–Collar, Inc.,* 29 B.R. 724 (Bankr.W.D.La. 1983); and *In re All–Brite Sign Serv. Co.,* 11 B.R. 409 (Bankr.W.D.Ky.1981).

In order to save a claimed interest from the invalidating provisions of § 552 it is the burden of the party to establish the following:

(1) The security agreement by its terms must extend to the after-acquired property specified in § 552(b), i.e. "proceeds, product, offspring or profits of such property."

(2) The after-acquired property itself must fit within one of the categories enumerated in § 552(b).

(3) The statutory "exceptions to the exception" (i.e., §§ 363, 544, 545, 547 and 548) do not apply.

(4) The equities do not require otherwise.

*Matter of T–H New Orleans Ltd. Partnership,* 10 F.3d 1099 (5th Cir.1993).

This record leaves no doubt that the charter hire payments cannot be classified as "proceeds, products, offsprings, or profits" within the meaning of those terms used in § 552(b). The only possible contention which could be made in good faith in support of the exception set forth in § 552(b) is that the charter hire payments are "proceeds" of the collateral. The contention advanced that the charter hire payments represent "proceeds" of the collateral is *without merit.* The concept of "proceeds" is only implicated when "one asset is disposed of and another is acquired as its substitute." *In re Hastie,* 2 F.3d 1042, 1045 (10th Cir.1993). *See also* U.C.C. § 9–306(1) (defining "proceeds"). Accordingly, cases have recognized:

> If proceeds included funds generated from any use of collateral, arguably all postpetition funds would become proceeds. Congress intended to extend a prepetition lien postpetition when collateral is converted into new collateral.

e.g., *In re Corpus Christi Hotel Partners, Ltd., supra* at 856.

In addition, Meridian/Blue Water contends that the charter hire payments are, in fact, rents, thus by virtue of the 1994 Amendment of the Code, which added Subclause (b)(2) to § 552, their claimed lien is not subject to the voiding provision set forth in § 552(a). Even a cursory reading of this new provision leaves no doubt that the charter hire payments can, under no stretch of the imagination, be considered to be rents. Obviously, before payments could be deemed to be rent, it presupposes a relationship between a landlord and a tenant, or lessor and lessee. That is, the owner of the property which is rented or leased to a debtor, either real property or chattels. It is without dispute that the Shipyards never owned any of the L–9 vessels.

It is clear from the legislative history of this Amendment that it was designed to assure that entities who hold the mortgage on an income producing parcel of real estate whose mortgage, or some other document, granted a security interest in the rents, is preserved and not invalidated to any rents collected from the real property which became due and was collected postpetition.

The second prong of this Amendment was designed to protect hotel revenues which were pledged to secure loans to hotels and/or lodging accommodations. There is nothing in the Legislative History which remotely intimates that the Amendment intended to encompass and cover lease payments derived from chattel leases, which is specifically dealt with by § 365(d)(10). HR Rep. 103–834, 103rd Cong. 2nd Sess. 27–29 (Oct. 4, 1994).

## MARITIME LIEN CLAIM OF MERIDIAN/BLUE WATER AND THE SHIPYARDS

Before discussing the claim asserted in Count VI of the Debtor's Cross–Claim it is necessary to discuss the alternative theory, which is the central thrust of Meridian/Blue Water's and the Shipyards' argument. Both urge that the lien claimed by them is a maritime lien on the charter hire payments, which does not require perfection and is not subject to the powers of the Uniform Commercial Code and, in turn, not avoidable by the Debtor based on § 544(a) of the Code for lack of perfection.

■ The maritime lien claimed here is not one based on 46 U.S.C § 971 which grants a maritime lien on the vessel to anyone who furnished repairs, supplies, towage, use of a dry dock, or other necessaries. This lien is involuntary and is imposed by the Statute and is not dependent on a contract. *Cardinal Shipping Corp. v. M/S Seisho Maru,* 744 F.2d 461 (5th Cir.1984); *Western Bulk Carriers (Australia) v. P.S. Int'l Inc.,* 164 B.R. 616 (S.D.Ind.1994); *Matter of Topgallant Lines*

*Inc.,* 154 B.R. 368 (S.D.Ga.1993) *aff'd* 20 F.3d 1175 (11th Cir.1994).

As noted at the outset, the Shipyards conceded that their lien is merely derivative of the lien of Meridian/Blue Water and it did not come into existence until the Debtor's transaction with Meridian/Blue Water was concluded. The Shipyards do not contend that they have a maritime lien on the charter hire payments as the result of their admittedly valid preferred ship's mortgages, a proposition well supported by existing law. The proposition is amply supported by existing law that a preferred ship's mortgage, does not create a lien on freight or charter hire payments. In *In re McLean Industries, Inc.* 162 B.R. 410 (S.D.N.Y.1993), the District Court held on appeal that a mortgage under the Ship Mortgage Act does not extend to the freight of the mortgaged vessel, absent express language in the mortgage documents. *Id.* at 413, citing *In re Levy–Mellon Marine,* 61 B.R. 331, 334 (Bankr.W.D.La. 1986) and *United States v. Sterling,* 22 F.2d 323 (S.D.N.Y.1927).

The Shipyards' reliance on the case of *In re Pacific Caribbean Shipping (U.S.A.), Inc.,* 789 F.2d 1406 (9th Cir.1986) and *Western Bulk Carriers (Australia) v. P.S. Int'l. Inc., supra,* is misplaced. Both cases involve "real" owners of vessels, unlike Meridian/Blue Water which were *purported* to be owners of the L–9 vessels, but turned out to be merely lessors. Thus, *In re Pacific Caribbean* and *Western Bulk* furnish little support for the proposition urged by the Shipyards.

■■■■ The maritime lien claimed here is dependent upon the grant of the lien which must be found to be present in a maritime contract. *Matter of Topgallant Lines, Inc.,* 125 B.R. 682 (Bankr.S.D.Ga.1991), *aff'd per curiam, sub. nom., McAllister Towing v. Ambassador,* 20 F.3d 1175 (11th Cir.1994), (only an owner of the vessel who has contractually reserved such a lien may assert a maritime lien). Ordinarily it is conceptually unacceptable that an owner may have a lien on the very property it owns. Nevertheless, it is uniformly recognized that "to secure payment of sums due under a charter of his ship, a shipowner may create, by express provision in the charter party, a lien on the subfreights earned by his vessel." *Marine Traders Inc., v. Seasons Navigation Corporation,* 422 F.2d 804 (2d Cir.1970).

No one can quarrel with or dispute the validity of these principles just discussed. However, the difficulty with the proposition urged by Meridian/Blue Water and the Shipyards is that this court already ruled that the transaction between the Debtor and Meridian/Blue Water was not the sale and a leaseback of the four L–9 vessels, but a financing arrangement. The four L–9 vessels were never "sold" to Meridian/Blue Water but were, and remained, the properties of the Debtor. Thus, in the present instance unless this Court's determination of the true character of the transaction between Meridian/Blue Water and the Debtor is incorrect or only applies prospectively, neither Meridian/Blue Water nor, in turn, the Shipyards, have any right to the charter hire payments made by APL postpetition.

Considering this last proposition first, this Court is satisfied that the recharacterization of the transaction between the Debtor and Meridian/Blue Water applies ab initio, that is, from the beginning of the transaction. In its order on summary judgment, this Court resolved Counts I and II in favor of Lykes based on its "conclusion that the Owner Participation Agreement and the Bareboat Charters were, as a matter of law, not leases at all but financing arrangements and, therefore, the ownership interest remained in Lykes and the four Pacific-class L–9 vessels are still owned by Lykes". In the ordering portion of this Court's ruling on Count I and Count II, this Court states unequivocally that Lykes is the record title owner of the four Pacific-class L–9 vessels known as the M/V PRESIDENT ARTHUR (Official No. 695901), M/V PRESIDENT BUCHANAN (Official No. 697633), M/V PRESIDENT GARFIELD (Official No. 905624), M/V PRESIDENT HARDING (Official No. 909326).

From the foregoing it is clear that the Final Judgment did not convey any right to Lykes, but merely established the relationship between the parties as it existed before. Thus, it merely clarified that Lykes was the owner of the vessels at all times and did not

become the owner of the vessels by virtue of the Final Judgment entered on Counts I and II of the Cross–Claim by the Debtor against Blue Water. This conclusion is amply supported by case law, all of which held that if a transaction is a disguised financing transaction, the purported lessee is the true owner of the "leased" property and that status relates back to the inception of the transaction. In *In re J.A. Thompson & Son, Inc.*, 665 F.2d 941 (9th Cir.1982), the court held that under U.C.C. § 1–201(37), "question of whether a lease was 'intended as security' is determined by reference to the intention of the parties at the time the transaction was consummated." *Accord, In re Standard Financial Management Corp.*, 79 B.R. 100 (Bankr.D.Mass.1987) (parties' intent at time of transaction is determinative). Indeed, in *Thompson*, the Ninth Circuit stated that it is improper to base such a determination on subsequent events because it would give the transaction "chameleon-like" qualities. 665 F.2d at 947 (citing *In re Vaillancourt*, 7 U.C.C. Rep. Serv. (Callaghan) 748, 1970 WL 12563 (Bankr.D.Me.1970)).

In *In re Ram Mfg., Inc.*, 56 B.R. 769 (E.D.Pa.1985), the district court affirmed a bankruptcy court decision that a purported lease was actually a disguised sale/financing transaction. Similarly, in *In re Fitch*, 174 B.R. 96 (Bankr.S.D.Ill.1994), the court recognized that the character of the contract was established at the time of its creation and could not later be changed. As in *Ram* and *Fitch*, this Court determined on summary judgment, as a matter of law, that the charter between Lykes and Meridian/Blue Water was at the time of its signing a financing transaction, and not a sale and lease back arrangement.

This relation-back concept is applied even where the parties have taken actions based upon their mistaken assumption that the transaction was a true lease. *Orix Credit Alliance, Inc. v. Pappas*, 946 F.2d 1258 (7th Cir.1991) (applying New York law); *Citi-Lease Co. v. Entertainment Family Style, Inc.*, 825 F.2d 1497 (11th Cir.1987); *National Equipment Rental, Ltd. v. Priority Electronics Corp.*, 435 F.Supp. 236 (E.D.N.Y.1977); *In re Chisholm*, 54 B.R. 52 (Bankr.M.D.Fla.

1985); *Morris v. Lyons Capitol Resources, Inc.*, 510 N.E.2d 221, 5 U.C.C. Rep. Serv.2d (Callaghan) 706 (Ind.App.1987).

This relation-back rule also applies even where the rights of third parties with no knowledge of the transaction have intervened. Most commonly, these right are those of the purported "lessee's" secured creditors. *E.g., Interpool Ltd. v. Char Yigh Marine (Panama) S.A.*, 890 F.2d 1453 (9th Cir.1989); *Percival Construction Co. v. Miller & Miller Auctioneers, Inc.*, 532 F.2d 166 (10th Cir.1976) (dispute between a purported "lessor," a bank lender, the IRS and the debtor); *Rocky River Condo Corp. v. Federal Deposit Ins. Co.*, 855 F.Supp. 489 (D.Mass. 1994) (dispute between lender and "lessor"); *In re 20th Century Enterprises, Inc.*, 152 B.R. 119 (Bankr.N.D.Miss.1992) (same); *In re Eureka Southern RR, Inc.*, 72 B.R. 813, 816 (Bankr.N.D.Cal.1987) (court empowered to disregard intervening rights); *U.C. Leasing, Inc. v. Barnett Bank*, 443 So.2d 384 (Fla. 1st D.C.A.1983) (dispute between lender and "lessor").

It follows from the foregoing that inasmuch as this Court determined that Meridian/Blue Water are not, and have not been, the owners of the four L–9 vessels and, of course, neither were the Shipyards, clearly based on the principles announced, they are not entitled to claim any maritime lien on the charter hire payments.

### CLAIM IN COUNT VI— STATUTORY LIEN

■ Ordinarily, this would resolve the ultimate issue involved in the controversy under consideration and it would not be necessary to consider the Debtor's attack under § 545 of the Bankruptcy Code on the Cross-Defendants' claimed interests. This section, entitled "Statutory Liens" provides, *inter alia*, that the Trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien:

(2) is not perfected and enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property, whether or not such a purchaser exists; [or]

(3) is for rent.

There is no contention by Meridian/Blue Water and, in turn, by the Shipyards, that their claim to a maritime lien is based on the Statute. Thus, for obvious reasons the voiding power provided by § 545 of the Code is inappropriate and, therefore, the Debtor's contention for avoidance of the interest claimed by Meridian/Blue Water and the Shipyards in the charter hire payments is without merit.

Based on the foregoing, this Court is satisfied that the charter hire payments were amounts subject to the provisions of the Uniform Commercial Code; that Meridian/Blue Water failed to comply with the perfection requirements of Article 9 of the UCC; and that, as a result, the Trustee's special voiding power granted by § 544(a)(1) & (2) is superior and defeats the claims of Meridian/Blue Water in the charter hire payments due from APL made postpetition.

From all these conclusions it follows that the Shipyards do not have a valid enforceable claim derivative from the rights of Meridian/Blue Water to the charter hire payments.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion of Mitsui Engineering & Shipbuilding Co., Ltd. and Mitsubishi Heavy Industries, Ltd. for Summary Judgment be, and the same is hereby, denied. It is further

ORDERED, ADJUDGED AND DECREED that the Debtor's Motions for Summary Judgment on Counts III, V and VI of its Cross–Claim are granted in part and denied in part. The Motions for Summary Judgement as to Counts III and V, are hereby granted. It is further

ORDERED, ADJUDGED AND DECREED and the Motion for Summary Judgment as to Count VI is hereby denied.

A separate Final Judgment will be entered in accordance with the foregoing.