**In re DELCO OIL, INC., Debtor.**

**No. 3:06–bk–03241–GLP.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

March 21, 2007.

Bradley R. Markey, Richard R. Thames, Stutsman, Thames & Markey P.A., Jacksonville, FL, for Debtor.

## *FINDINGS OF FACT AND CONCLUSIONS OF LAW*

GEORGE L. PROCTOR, Bankruptcy Judge.

This case is before the Court upon the Motion for Relief From Stay filed by CapitalSource. After hearings held on December 18, 2006 and January 12, 2007, the Court makes the following Findings of Fact and Conclusions of Law.

### *FINDINGS OF FACT*

1. Debtor was a motor fuel distributor headquartered in DeLand, Florida. On April 26, 2006, Debtor, as borrower, entered into a Revolving Credit and Security Agreement (the "Credit Agreement") with CapitalSource Finance LLC ("CapitalSource"). (Debtor's Ex. 1 [Credit Agreement].)

2. By entering into the Credit Agreement, CapitalSource agreed to make loans and other financial accommodations to Debtor via a revolving facility of up to $18 million. In exchange, Debtor pledged as collateral all of its right, title, and interest in and to, the Debtor's collections, cash payments, and inventory. (Debtor's Ex. 1 at § 2.11.) The Credit Agreement required Debtor to maintain its bank accounts with Fifth/Third Bank.

3. In June 2006, unbeknown to CapitalSource, Debtor opened a money market account with Mainstreet Community Bank with a deposit of $500,000 to secure a letter of credit issued by Mainstreet Bank in favor of Valero Energy Corporation. (CapitalSource Ex. 17 Deposition of W. Flowers, p. 28, l. 4–p. 31, l. 3).

4. On October 12, 2006, Debtor also secretly opened a checking account at Mainstreet Bank. (12/8/06 Tr. at 25). Debtor deposited approximately $600,000 into the checking account prior to the filing of the bankruptcy petition. (12/8/06 Tr. at 25).

5. CapitalSource does not have a Deposit Account Control Agreement with respect to the Mainstreet Bank accounts that were secretly opened. (12/18/06 Tr. at 47; 1/12/07 Tr. at 28–29).

6. CapitalSource has sufficiently traced the pre-petition deposits into the Mainstreet Bank account. David Phelps, a consultant for CapitalSource, testified that all the pre-petition deposits into the Mainstreet account has been traced through bank deposits. (1/12/07 Tr. at 29). Todd Gehrs, an officer of CapitalSource, testified that although he had not personally traced all the deposits into the Mainstreet Bank, as access was not provided by the Debtor, that he could surmise that the origin of the funds came from CapitalSource's cash collateral that had been improperly diverted. (12/18/06 Tr. at 33).

7. On October 17, 2006, Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On November 9, 2006, the Court entered an order denying Debtor's motion to use CapitalSource's cash collateral. On December 1, 2006, the case was converted to a Chapter 7 and Aaron Cohen was appointed as the Interim Chapter 7 Trustee. As of the petition date, the Debtor was indebted to CapitalSource under the Credit Agreement in an aggregate principal amount of over seventeen million.

8. CapitalSource has established that the post-petition funds in Debtor's bank accounts, constitute direct proceeds of its pre-petition collateral without the addition of other estate resources. (12/18/06 Tr. at 44; 1/12/07 Tr. at 20–26).

9. Aaron R. Cohen, as the Interim Chapter 7 Trustee and the Florida Department of Revenue (the "Limited Objectors") oppose the stay being lifted as to all pre-petition funds in the Mainstreet Bank accounts and to all of Debtor's post-petition bank deposits.

10. One day prior to the filing of the bankruptcy petition, CapitalSource filed suit against the Debtor in Maryland seeking a temporary restraining order to require Debtor to deposit funds into the Fifth/Third Bank pursuant to the Credit Agreement. (12/18/06 Tr. at 23).

11. The "Limited Objectors" consent to CapitalSource pursuing the Maryland litigation for the limited purpose of foreclosing its lien on collateral as to which the automatic stay is lifted, and for the purpose of liquidating the debt to the limited extent necessary to pursue claims against third party guarantors. The Limited Objectors object to CapitalSource's pursuit of the Maryland lawsuit for the purpose of determining CapitalSource's claim to the disputed bank accounts.[1]

12. On January 31, 2007, CapitalSource filed an adversary proceeding against the Interim Trustee seeking declaratory relief with respect to CapitalSource's alleged lien on the Mainstreet Bank accounts and the imposition of an equitable constructive trust.

## CONCLUSIONS OF LAW

In assessing whether to lift the automatic stay, pursuant to § 362(g)(1), CapitalSource bears the burden of proof on the issue of Debtor's equity in the property. The Limited Objectors bear the burden on every other issue. 11 U.S.C.A. § 362(g)(2). The Interim Trustee and Florida Department of Revenue have filed a limited objection to CapitalSource's Motion for Relief From Stay. Neither Limited Objector asserts that cause does not exist to lift the stay, rather they claim that CapitalSource cannot meet its burden of establishing that the funds maintained in the Mainstreet Bank accounts are traceable collateral of CapitalSource's loan or "identifiable proceeds" of that collateral.

### A. PRE–PETITION MAINSTREET BANK DEPOSITS

The Limited Objectors assert that CapitalSource's security interest does not extend to the pre-petition Mainstreet Bank account funds because (1) CapitalSource does not have a signed Bank Account Control Agreement and (2) CapitalSource has not met its burden of establishing which pre-petition deposits constitute identifiable cash proceeds. CapitalSource maintains that the funds in the Mainstreet Bank accounts constitute cash collateral or identifiable proceeds therefrom.

Pursuant to Florida Statutes § 679.3121(2)(a), a signed Bank Account Control Agreement is necessary in order to create a perfected interest in a bank

---

1. The Limited Objectors also oppose Capital-Source's pursuit of the Maryland lawsuit to the extent that the lawsuit would have a determinative or evidentiary effect on the bankruptcy case. Thus, the Limited Objectors request that the Court place language in the Relief From Stay Order that would further limit CapitalSource's pursuit of the Maryland lawsuit. However, the Court clearly stated at the January 12, 2007, hearing that it was simply going to deal with the Motion For Relief From Stay and that no additional language would be contained in the order. (January 12, 2007, Tr. p. 37, 1.3–21).

account. Florida Statute § 679.3121(2)(a), provides, in pertinent part:

> Except as otherwise provided in § 679.3151(3) and (4) for proceeds:
>
> (a) a security interest in a deposit account may be perfected only by control under s. 679.3141.

The official comment to UCC Revised § 9–312, upon which Fla. Stat.

679.3151(2)(a) is similar, provides in pertinent part:

> 5. **Deposit Accounts.** Under new subsection (b)(1), the only method of perfecting a security interest in a deposit account as original collateral is by control. Filing is ineffective, except as provided in Section 9–315 with respect to proceeds. As explained in Section 9–104, "control" can arise as a result of an agreement among the secured party, debtor, and bank, whereby the bank agrees to comply with instructions of the secured party with respect to disposition of the funds on deposit, even though the debtor retains the right to direct disposition of the funds.

Based upon the above, the Limited Objectors maintain that without a control agreement as to the Mainstreet Bank account that CapitalSource cannot establish a *prima facie* security interest in the pre-petition account. Although CapitalSource recognizes that it lacks a deposit account agreement it contends that because the Mainstreet Bank accounts were concealed that the Interim Trustee should be estopped from relying on the lack of such an agreement. Additionally, CapitalSource argues that the pre-petition funds constitute "identifiable cash proceeds" of collateral in which it has a security interest.

Florida Statutes, Section 679.3151 addresses the secured party's rights on disposition of collateral and in proceeds. This section provides, in pertinent part:

> (1) (b) A security interest attaches to any identifiable proceeds of collateral.
>
> (2) Proceeds that are commingled with other property are identifiable proceeds:
>
> * * *
>
> (b) if the proceeds are not goods, to the extent that the secured party identifies the proceeds by a method of tracing, including application of equitable principles, that is permitted under law other than this chapter with respect to commingled property of the type involved.

Although the Limited Objectors do recognize that CapitalSource may eventually establish that a portion of the pre-petition contents of the Mainstreet Bank account may constitute "identifiable proceeds" of its collateral, they maintain that CapitalSource has not yet sufficiently traced the deposits or identified the origin of each deposit. Conversely, CapitalSource maintains that the unrebutted testimony proffered at the hearings by Todd Gehrs, an officer of CapitalSource and David Phelps, a consultant for CapitalSource, supports a finding that the pre-petition deposits constitute identifiable cash proceeds of its collateral.

Mr. Phelps testified that all the pre-petition deposits into the MainStreet Bank account had been traced through bank statements. (1/12/07 Tr. at 29). Mr. Gehrs testified that although he had not personally traced all the deposits into the Mainstreet Bank, as access was not provided by the Debtor, that he could surmise that the origin of the funds came from CapitalSource's cash collateral that had been improperly diverted. (12/18/06 Tr. at 33).

Upon weighing the testimony proffered, in light of the lack of access provided on behalf of the Debtor, the Court finds that CapitalSource has sufficiently carried its burden of establishing that the pre-

petition deposits into the Mainstreet Bank account constitute identifiable cash proceeds of collateral in which it holds a perfected security interest. Additionally, as the Mainstreet Bank accounts were set up covertly by Debtor, the lack of deposit account agreement should not be used as a sword against CapitalSource. Thus, the Court finds that CapitalSource is entitled to Relief From Stay as to the pre-petition deposits in the Mainstreet Bank account.

### POST–PETITION BANK DEPOSITS

11 U.S.C. § 552(a) generally cuts off a secured creditor's lien on collateral acquired after the commencement of the case. However, § 552(b)(1) creates an exception for "proceeds" of pre-petition collateral to the extent provided "by applicable law." As the secured creditor has the burden of proof, CapitalSource must demonstrate, pursuant to 11 U.S.C. § 552(b), that its security interest, created by the Credit Agreement, extends to property of the Debtor acquired before the commencement of the case and to proceeds, products, offspring, or profits of such property. *In re Lykes Bros. S.S. Co.*, 216 B.R. 856, 863 (Bankr.M.D.Fla.1996).

The concept of "proceeds" is only implicated when "one asset is disposed of and another is acquired as its substitute." *Id.* at 864. "Section 552(b) is intended to cover after-acquired property that is directly attributable, without addition of estate resources." *Collier on Bankruptcy* ¶ 552.02[2][a].

In the instant case, the Limited Objectors maintain that Debtor's post-petition cash flow was generated from a wide variety of additional estate resources, including: fuel tax withholding; labor; use of Debtor's real estate for storage and sale of product; and use of Debtor's truck fleet for distribution and delivery of product. CapitalSource maintains that none of the funds remaining in Debtor's bank accounts can be traced to funds set aside to pay taxes or were generated using unencumbered assets of the Debtor. The Court will examine each of these categories separately.

### Fuel Tax Withholding

Mr. Gehrs, an officer for CapitalSource, testified that although Debtor had established a separate tax account, presumably for the payment of fuel taxes, there were no funds in that account at any relevant time. (12/18/06 Tr. at 44). Additionally, Mr. Phelps testified that even if funds to pay fuel taxes had not been segregated in a separate tax account, any funds from the company's other bank accounts that had been earmarked for payment of the September fuel taxes had been spent within a few days of the bankruptcy filing. (1/12/07 Tr. at 20–24). Mr. Phelps further testified that, "as of the bankruptcy filing, the taxes that would have been due the State of Florida were being paid to the fuel supplier." (1/12/07 Tr. at 24).

### Labor

Mr. Phelps also testified that no unencumbered assets of Debtor were used to pay for labor that generated any of the funds currently in the Mainstreet Bank account. Specifically, Mr. Phelps stated that, "[t]o the extent that the labor was paid for, it was paid for using Capital-Source's cure letter as cash collateral" or by third-parties. (1/12/07 Tr. at 24–25).

### Real Estate

In regards to Debtor's real estate, Mr. Phelps's testified that because all Debtor's real estate was fully encumbered, it was not an unencumbered asset that contributed to the generation of funds currently in the Mainstreet Bank Account. (1/12/07 Tr. at 25).

### Truck Fleet

As to the use of Debtor's truck fleet, Mr. Phelps testified that "there was no value created [by the truck fleet] in that all the

expenses for operating the trucks, the repairs, maintenance, insurance, was all paid for using CapitalSource's . . . cash collateral." (1/12/07 Tr. at 25–26).

Based upon the testimony proffered, CapitalSource maintains that it has carried its burden of establishing that the post-petition bank deposits constitute direct proceeds of its pre-petition collateral without the addition of other estate resources. The Court agrees and finds that CapitalSource has produced sufficient evidence to carry its burden as to the post-petition bank deposits.

### CONCLUSION

Based upon the above, the Court finds CapitalSource's Motion for Relief From the Automatic Stay is entitled to be Granted. The stay shall be modified to permit CapitalSource to foreclose and gain possession of its collateral and continue its prosecution of the Maryland lawsuit. The Court will enter a separate order that is consistent with these Findings of Fact and Conclusions of Law.